ATLANTIC COAST LINE RAILROAD COMPANY *v.*
POSTAL TELEGRAPH–CABLE COMPANY.

1. The telegraph company instituted proceedings against the railroad company in the county where the main office of the latter was located.   The award was filed in the office of the clerk of the superior court of the county where the proceedings were had, and an appeal taken to the superior court of this county.   This appeal was authorized by the law providing for condemnation of a railroad's right of way for telegraph purposes.   Civil Code, §§ 4677, 4678; Acts 1898, p. 54.

2. On the appeal from the award of the assessors in the condemnation proceeding, the issue of fact for the jury is the amount of compensation to be paid for the property taken or damaged for public purposes.

3. A telegraph company acquires only an easement to the right of way of a railroad company condemned for the purpose of constructing and operating a telegraph line thereon.

4. The easement acquired embraces the land actually occupied by the poles and fixtures for guy wires, and the right to stretch the wires upon the poles and to enter upon the right of way to construct and repair the telegraph line.

5. The only exclusive right of occupancy the telegraph company acquires by condemnation proceedings is the occupancy of the land occupied by the poles for telegraph purposes.

6. The measure of damages in such cases is the value of the land actually taken and the extent to which the use of the right of way by the railroad company is diminished by its use by the telegraph company.

7. The right of way of a railroad company has no general market value for other uses than that to which it is applied. The appropriation to public use amounts to a withdrawal of the right of way from any use except that which is necessary or auxiliary to the operation of the railroad.

8. Peculiar advantages and benefits accruing to a telegraph company from its use of the railroad's right of way can not be considered in the assessment of damages. The railroad company can only claim compensation for its land taken and damages resulting from the construction and maintenance of the telegraph line. A burden not imposed by the telegraph company is not an element of damages. Thus there was no error in excluding evidence as to the cost of the change of grade, or the clearing of the right of way and keep it free from obstructions.

9. Remote or speculative damages can not be recovered. The bare suggestion that at some vague time in the future the railroad company may lay additional tracks or build structures for railroad purposes is too remote to authorize the admission of evidence of the damage which might result from such possible contingencies. In its notice of condemnation the telegraph company stipulated that should such contingencies happen, it would remove at its own expense the poles and wires, so as not to interfere with such extensions and improvements.

10. The possibility of poles placed at a greater distance than their height from the track falling upon the track is too remote to be considered in estimating damages.

11. Annoyances and inconveniences to the railroad company must be real and of such a character as to interfere in some manner with the railroad's right to exercise its business, to become an element of damage.

12. The benefit a railroad company may derive from a contract with another telegraph company already occupying its right of way is not an element of damage. The measure of damage includes, not what another telegraph company may contract for certain privileges, but the extent such contract would be impaired by the construction of the second line of telegraph.

13. The form of the verdict, while irregular, covered all of the issues involved, and the amount found by the jury is sustained by the evidence.

Argued April 7,—Decided June 9, 1904.

Condemnation — appeal.   Before Judge Seabrook.   Chatham superior court.   February 14, 1903.

*W. L. Clay,* for plaintiff in error.

*Garrard & Meldrim* and *J. R. McIntosh,* contra.

EVANS, J.   On September 8, 1900, the Postal Telegraph-Cable Company caused to be served upon the Savannah, Florida & Western, Railway. Company a notice that condemnation proceedings would be instituted against it in order to secure the privilege of constructing a telegraph line along its right of way from Albany to Thomasville and from Thomasville to Valdosta.   This notice was on the same day filed in the office of the clerk of the superior court of Chatham county.   On September 20, 1900, the railway company filed a petition for injunction against the Postal Telegraph-Cable Company, alleging that there was no authority of law for the proposed condemnation proceedings, and that the statutes under which the latter company claimed the right to condemn were, for various reasons stated, unconstitutional and void.   On the same day the railway company sent a response to the notice above referred to, therein advising the Postal Telegraph-Cable Company that in naming the person to act as the arbitrator selected by the railway company, it did so subject to its petition for injunction and without any prejudice whatsoever to its rights in the premises.   Subsequently the railway company filed an amendment to its petition for injunction, and an interlocutory hearing was had thereon upon the 22d of November, 1900, the judge setting aside the restraining order previously granted and refusing to grant a temporary injunction.   To this action of the judge the railway company excepted, and brought the case to this court for review, and on February 28, 1901, the judgment of the lower court denying the injunction was affirmed.   See 112 *Ga.* 941.   Shortly after the interlocutory hearing on the petition for injunction, and before the decision of this court was rendered, to wit, on December 31, 1900, the railway company appeared before the board of assessors who had been selected to conduct the condemnation proceedings, and, without waiving any of its rights under its petition for injunction, filed objections in writing to the further progress of those proceedings.   One of these objections was that the notice of condemnation was legally insufficient, in that

it did not point out with reasonable certainty and definiteness the location of the lands sought to be condemned.　The Postal Telegraph-Cable Company thereafter amended this notice, over the objection of the railway company.　Despite its protest, the board of assessors proceeded with the investigation, and, on January 5, 1901, rendered an award for the sum of six thousand dollars as compensation for the property rights of the railway company which the Postal Telegraph-Cable Company sought to condemn.　On January 16, 1901, the Postal Telegraph-Cable Company, being dissatisfied with the amount of this award, entered an appeal to the superior court of Chatham county.　On the 13th of March following, the railway company filed in the court a "motion to dismiss and quash said condemnation proceedings" and to declare null and void the award therein rendered.　The grounds of this motion were: (1) that the condemnation proceedings were without authority of law, in that the statutes upon which they were predicated were unconstitutional and void; (2) that the act of December 20, 1898, amending certain sections of the code, "make no provision whatsoever for the appointment of an assessor in the event the landowner or the railway company or other person interested shall fail to appoint an assessor, or if the owner of the land sought to be condemned shall fail to agree upon an assessor, or if the owner is unknown," and that the statutes of this State which relate to the selection of an assessor to act in behalf of the landowner or other person interested "are inapplicable in this case, where one condemnation proceeding is instituted to condemn land located in five separate and distinct counties," wherefore said act of 1898 is class legislation and in conflict with the constitution of the United States, which provides that no person shall be denied the equal protection of the laws or deprived of property without due process of law, etc., as well as a violation of the constitution of the State of Georgia, for like reasons; (3) that the act of 1898 is further in conflict with the constitution of this State and of the United States, because it "fails to make any provision for the appointment of a third assessor in the event the two assessors selected shall fail to agree upon a third;" does not provide any machinery for determining the necessity of condemning land or property rights therein for the use of the public; makes no provision for the filing of an award, or for entering an appeal therefrom, and is too vague

and indefinite to authorize the condemnation of a railway right of way for use by a telegraph company; (4) that the act of 1898 is "contrary to the constitution of the State of Georgia, which provides that all cases respecting the title for land shall be tried in the county in which the land is situated," for the reason that said act provides "for the institution and trial of condemnation proceedings in counties other than that in which the land is situated," and authorizes the assessors to render an award without going on the land sought to be condemned and conducting the hearing on the premises, as in other cases provided; (5) that the notice of condemnation did not describe the land sought to be condemned with sufficient certainty, and for that reason the notice was too indefinite to support a certain and valid award; (6) that it did not appear that there was any public necessity to condemn any portion of the railway right of way; nor that the portion sought to be condemned was necessary for the purpose of constructing and operating a telegraph line; and (7) that the "notice of condemnation and the said award provide for the crossing of this railway company's right of way and tracks under ground by said telegraph company's line, which is not authorized by law." This motion to dismiss was, on June 8, 1901, amended by adding the following grounds: (1) the award is defective and insufficient, because it fails to adjudicate the issues raised by the defendant's objections to the condemnation proceedings, which objections were urged before the assessors before any evidence was introduced; (2) the award is too indefinite, in that it fails "to specify what is so much of the right of way of a railway company as may be necessary for the use of a telegraph company for the purpose of erecting, maintaining, and operating its line of telegraph along and upon such right of way;" and (3) the award fails "to designate and specify the exact portion of the right of way, or how much thereof, or what part thereof, may be taken by the plaintiff," and also fails to specify or designate "at what distance from the outer edge of the land on which this defendant operates its trains, commonly called its right of way, . . . or at what distance from its track the said poles and line of telegraph might be located and erected;" for which reasons the plaintiff was not authorized, under said award, to enter upon the right of way or make any use of the same, and so to do "would be contrary to the State and Federal constitu-

tions, in that the property of the defendant would be taken without due process of law."

To the motion, as amended, the Postal Telegraph-Cable Company filed its answer, admitting all the allegations of fact on which the motion was based; and on June 8, 1901, the day on which the amendment was made and the answer filed, the court passed on the motion to dismiss and overruled the same.    Later, on July 24, 1901, the railway company filed a motion to dismiss the appeal to the superior court entered by the Postal Telegraph-Cable Company, because that court was without jurisdiction to entertain the appeal, and because if any right to appeal existed under the law, the appeal should have been "filed and tried in the superior courts of the counties of Dougherty, Mitchell, Thomas, Brooks, and Lowndes, and in each of them."    On the same day, the judge heard this motion and passed an order overruling the same.    He also struck a plea to the jurisdiction, based on the same grounds, which had been filed by the railway company, and overruled a motion to dismiss the appeal, presented by that company, predicated upon the company's contention that there was no provision of law authorizing such an appeal to be entered.    Thereupon the railway company demurred to the notice of condemnation, insisting (1) that it did not locate with sufficient certainty the land sought to be condemned, and (2) that the law did not contemplate or provide for any removal and replacement of the telegraph fixtures, such as stipulated in said notice, in the event the railway company might in the future desire to construct additional tracks, warehouses, or other structures on its right of way, and a change in the location of the telegraph poles or wires should therefore become expedient.    The court overruled this demurrer, the railway company was allowed to amend the answer which it had previously filed and urged before the board of assessors, and the case proceeded to a trial on the merits before a jury.    The railway company then invoked a ruling as to the issues to be submitted to and passed on by the jury, and the court held that "the issue to be tried by the jury [was] as to the value of the property taken or damage done to the right of way of the defendant in the construction and maintenance of a telegraph line as set out in the notice of condemnation."    On July 26, 1901, the jury returned a verdict reciting that they found (1) that "for taking

the property sought to be condemned, . . the Postal Telegraph-
Cable Company shall pay to the Savannah, Florida and Western
Railway Company, as owner, the sum of thirty-three 12/100 dol-
lars ;" and (2) that no consequential damages or benefits would
result from such taking, so far as the property of the railway com-
pany not taken was concerned.    A judgment was entered in ac-
cordance with this verdict, and on July 29, 1901, the railway
company filed a motion for a new trial. This motion was subse-
quently amended by adding thereto fifty-three grounds, in which
error was assigned upon rulings made by the court during the prog-
ress of the trial.    On February 6, 1903, an order was taken mak-
ing the Atlantic Coast Line Railroad Company a party to the case
in lieu of the Savannah, Florida and Western Railway Company,
it being made to appear to the court that the latter corporation
had been consolidated with and merged into the former. The mo-
tion for a new trial, as amended, came on for a hearing on Feb-
ruary 14, 1902, and was overruled by the court.    The Atlantic
Coast Line Railroad Company then sued out a bill of exceptions,
therein assigning error upon the refusal to grant it a new trial, as
well as upon the overruling of the motion to dismiss the proceed-
ing and the various other adverse rulings, above mentioned, to
which the railway company had duly filed exceptions pendente
lite.

It is pertinent to add, as a part of the history of this litigation,
that this is the fourth time it has been before this court, and that
many of the questions now presented for determination have
heretofore been adjudicated in favor of the Postal Telegraph-
Cable Company.    The petition for injunction filed by the Rail-
way Company still remains pending in the court below, there
having been as yet no final trial on the merits before a jury.

After the judgment refusing to grant a temporary injunction
was affirmed by this court (112 *Ga.* 941), the Railway Company
filed an amendment to its petition, setting forth various reasons
why the condemnation proceedings should be enjoined, and the
judge granted a rule calling upon the Postal Telegraph-Cable
Company to show cause why an injunction should not be granted.
After hearing the parties, the judge declined to grant the appli-
cation for a temporary injunction; the Railway Company ex-
cepted by writ of error, and this court affirmed the judgment of

the court below.    See 113 *Ga.* 916.    After the award of the assessors had been made, and pending the appeal to the superior court entered by the Postal Telegraph-Cable Company, that company paid into the registry of the superior court of Chatham county the amount of the award, and then proceeded to construct a telegraph line over the right of way of the Railway Company, which resisted this work of construction with force, cutting down the telegraph poles and removing the same from its right of way. Thereupon the Postal Telegraph-Cable Company instituted an independent proceeding, the purpose of which was to enjoin the Railway Company from interfering with the construction of this telegraph line.    The court granted an interlocutory injunction ; the Railway Company brought this action under the review of this court by a writ of error, and the judgment of the lower court was affirmed.    See 115 *Ga.* 554.

1. On the call of the case on appeal, counsel for the railway company requested the court to determine the issue to be submitted to the jury, and the judge submitted the following : " Upon the appeal the issue is as to the value of the property taken, or damage done to the right of the defendant in the construction and maintenance of a telegraph line, as set out in the notice of condemnation."    The plaintiff in error contended that many other issues were involved, such as the necessity of condemnation, the jurisdiction of the court to entertain the appeal, and questions of like character.    These were purely legal propositions, and had been previously adjudicated by the court and the rulings on the same affirmed by this court.    112 *Ga.* 941 ; 113 *Ga.* 916 ; 115 *Ga.* 554.    The plea to the jurisdiction of the court was stricken on demurrer.    Plaintiff in error contends there is no authority of law for an appeal from the award of the assessors to a jury in the superior court of Chatham county ; that if an appeal would lie, the superior court of each of the counties of Dougherty, Mitchell, Thomas, Brooks, and Lowndes had jurisdiction to try the appeal as to the land in each of the respective counties ; in which courts said appeals should be filed and in none other.    The act of 1894, Civil Code, §§ 4677, 4678, provided for the filing of the award in the office of the clerk of the superior court of the county where the property is situated, or the franchise sought to be condemned is exercised, and gave either

party the right to enter an appeal from the award to the superior court of the county where the award is filed. The amendatory act of 1898, the constitutionality of which was upheld in the carefully considered opinion of Justice Little in the case in 115 *Ga.*, provides for one condemnation proceeding, which may be had in the county in which the principal office of the company is located. The main office of the plaintiff in error was in Chatham county, the condemnation proceedings were had in that county, and the award was filed in the office of the clerk of the superior court of that county.

In the construction of an amending statute, the law amended, as well as the amending act, should be construed in such a manner as to give full effect to the legislative intent. The purpose of the legislature by the amending act was to avoid a number of condemnation proceedings, by providing for one trial instead of as many trials as there are counties traversed by the telegraph company. The right of appeal was not affected in any manner. The old law provided for the filing of the appeal in the office of the clerk of the superior court where the property is situated, because the condemnation proceedings were had in that county. If the condemnation proceedings are had in the county of the principal office of the corporation whose property is sought to be condemned, the award of the assessors should be filed in that county, and the superior court of the county where the award is filed would be the proper forum to which the appeal should be taken.

2–12. A telegraph company does not acquire the fee, but only an easement, in the right of way of a railway company condemned for the purpose of constructing a telegraph line thereon. The easement embraces the land actually occupied by the poles and fixtures for guy wires, and the right to stretch the wires on the poles and to enter upon the right of way to construct and repair the telegraph line. The measure of damages in such a case is the value of the land actually taken and the extent to which the value of the use of the right of way by the railway company is diminished by its use by the telegraph company. The telegraph company must pay for the land taken and the damage sustained by the railway company by the construction and maintenance of the telegraph line. The damage thus sustained is not the value of the land under the wires and between the poles, but the

extent to which the value of the use of that part of the right of way between the poles and under the wires for railroad purposes is diminished by its use by the telegraph company. The space between the poles is not occupied exclusively by the telegraph company; the railway company still has the right, notwithstanding the construction of the telegraph line, to use this interval of space. It can not be said that the land between the poles is taken where the railway company has not been excluded from its possession, but has a right to use this particular part of its property for any lawful use just as it had before the construction of the telegraph line, with the limitation of the burden imposed thereon for the necessary purposes of the telegraph company as designated in its notice of condemnation:

In arriving at the value of the land actually appropriated, the general salable value of the right of way for other uses than that to which it is applied by the railway company can not be considered. While it is true that the railway company has the absolute fee, the right of way has no general market value so long as it is used by the railway company for railroad purposes. The appropriation to public use amounts to a withdrawal of the right of way from any use except what is necessary or ancillary to the operation of the railroad. The railway company is a creature of the law; it is an artificial person with limited powers, and the scope of its powers is determined by its charter. The act of incorporation, while conferring powers, also imposes duties upon this legal entity. It owes a duty to the State and the public to exercise its corporate functions for the promotion of the purpose of its organization. So long as a railway company uses its right of way for the purpose of its incorporation it can not devote it to any other purpose than that of operating a railroad, or some purpose ancillary thereto. Any other disposition of its right of way while it is discharging its duty to the public under the act of incorporation can not be presumed. The record does not disclose any intention, present or prospective, on the part of the railway company to abandon its right of way, or to devote it to any other purpose that its use for a railroad. The railway company, in the operation of a railroad, is performing a quasi-public function. On the faith of the discharge of this public duty, it was given the right to acquire, either by voluntary contract, or by condemnation, pri-

vate property necessary to accomplish the purpose of its organiza-
tion.   The possible contingency of applying the land acquired for
this purpose to a different and altogether foreign use, even if per-
missible under its charter and the tenure of its title, is too remote
to be considered in assessing the value of the land.   In estimat-
ing the value of the land taken and appropriated to the exclusive
use of the telegraph company, only the value of the land, deter-
mined by the use to which it is applied, can be considered, and
any supposed market value contingent on the remote possibility
of the abandonment of the operation of the railroad, or the sub-
jection of the right of way to any other use, is too remote to be
taken into consideration.

That the right of way may possess peculiar advantages and
benefits to the telegraph company in the construction and main-
tenance of its line is not a proper element in the estimate of dam-
ages.   The telegraph company is under a legal duty to compensate
the railway company for the damage done to it by the construc-
tion of its line of telegraph, and any supposed benefits which it
may receive from using the right of way are of no concern to the
railway company if the latter receives full and adequate compen-
sation for the value of the land taken and the damage done to its
property by the construction of the telegraph line.   A burden
not imposed by the telegraph line is not an element of damage.
Likewise, the cost of clearing the right of way, draining the same
and keeping it free from obstructions, which was expense incurred
by the railway company for the purpose of operating its railroad,
is not to be considered in assessing the damages ; because this ex-
pense is incurred, not as a result of the construction of the line of
telegraph, but because it was necessary to the railway company
in the safe conduct of its own business, to do this very work.
The right of way is cleared, the natural growth is removed, not to
provide a suitable situs for the construction of a telegraph line,
but to facilitate and aid the railway company in the operation of
its trains.   This condition of things existed at the time the tele-
graph company sought to build its telegraph line, and only to the
extent that the telegraph line interferes with the use of the right
of way can the railway company recover damages.   In the opera-
tion of its railroad, the railway company finds it necessary to burn
off the grass and decayed vegetation and to keep down under-

growth to protect its tracks from the ravages of fire.     Independently of the location of the telegraph line on its right of way, the railway company must continue to perform work of this character for the protection of its own property.     What has been done for its own benefit can not be claimed as an element of damages by reason of the occupancy of its right of way by the telegraph company's line.

It is a general and fundamental principle of the law that damages, whether resulting from the breach of a contract or the commission of a tort, remote and speculative in their nature, can not be recovered.     The bare suggestion that at some vague time in the future the railway company may lay additional tracks or build structures for railroad purposes is too remote to authorize a recovery of damages resulting from such possible contingencies.     Besides, in the present case the telegraph company expressly stipulates in its notice of condemnation that it seeks to occupy the railroad property with its line of telegraph subject to the right on the part of the railway company to change its location on the right of way to such other place as will not interfere with the railway company, in the event the railway company should find it necessary to lay additional tracks or build structures on its right of way.     Any inconvenience or annoyance resulting from the construction of the telegraph line, which is of such a character as to interfere in any way with the operation of the railroad by reason of the construction of the telegraph line, may properly be considered by the jury in assessing damages; but the evidence must disclose the facts from which such inconveniences or annoyances result; no presumption of fact can be drawn that any special annoyance or inconvenience will result solely because of the construction of the telegraph line.

Plaintiff in error says that another element of damages which was excluded from the consideration of the jury was the rental value of the right of way, and the benefit it derived from its contract with the Western Union Telegraph Company.     From what has been said, the right of way has no general salable value; it follows that it can have no general rental value.     It can not be presumed that its present contract with the Western Union Telegraph Company will continue indefinitely.     The benefit to the railway company from its contract with the Western Union Telegraph Company can not be considered in the estimate of dam-

ages, because the measure of damages includes, not what another telegraph company may contract to pay for certain privileges, but the extent that contract would be impaired by the construction of the second line of telegraph.   Instead of being damaged, it would seem that the railroad company, having the advantage of two lines, one on either side of its right of way, would be benefited, because of probable competition.   Another view which might properly be taken of this contract with the Western Union Telegraph Company, in considering whether the contractual benefit derived therefrom would be an element in measuring damages, is that it would be in the power of the railway company and the first telegraph company to make a contract by which the telegraph company would assume to pay such an unreasonable sum in excess of the real value of the benefits obtained as to exclude another telegraph company from occupying its right of way.   A contract of this kind would have a tendency to create a monopoly; and, as was held in the case of *Western Union Telegraph Co.* v. *American Union Telegraph Co.*, 65 *Ga.* 160, a contract between a railroad company and a telegraph company granting exclusive right of occupancy on the railroad right of way is void.

The railway company insists that the erection of the poles is a menace to the safe operation of its road.   We are unable to see how a telegraph pole of less height than the distance from its location to the track can be considered a menace to the operation of the road.   It is possible that as a result of a violent storm the poles may be blown down and across the track; but the possibility of such a result is so contingent that it is not a proper element in the assessment of damages.   The fact that on a past occasion a tree located near the edge of the right of way was blown across the track by a storm affords no reason to conclude that a telegraph pole or poles may be blown across the track.   The instance cited arose out of the ordinary; it was not normal, and, possibly, may never occur again.   Should an injury of this character result in damage to the railway company by reason of the defective or faulty construction of the telegraph line, it has an ample remedy for reimbursement; but it will not be presumed that such an injury may result in the ordinary course of affairs.

There is an essential difference between the various elements of damage which enter into the assessment of private property

taken for public use and that which enters into the assessment of damages for burdening property devoted to one public use by imposing upon it an additional easement of a public nature.   Where private property is taken for public use, as by condemnation by a railroad company, the owner is entitled to compensation for its whole value; not for any particular object, but for all purposes to which it may be appropriated.   Thus in the bridge case (*Harrison* v. *Young*, 9 *Ga.* 359), the owner of the land was permitted to prove the value of the land seized and occupied by the company as a bridge site and its value for any and all other legitimate purposes to which it was specially adapted.   This same principle was applied in the case of Boom Company *v.* Patterson, 98 U. S. 403, and it was there held that the owner was entitled to compensation for what the land was worth from its availability for valuable uses.   In both of these cases the taking of the private property was of such an exclusive character that the owner was entirely deprived of any further use and enjoyment of it.   His dominion over it ceased, and the public use was inconsistent with any use of the property by the original owner.   This is not the case where an easement is imposed on property already appropriated to public use; which easement does not absolutely exclude, but only curtails, the use of the property burdened with the servitude.   To the extent the easement impairs the use of the servient land, the owner of the latter is damaged.  ·

The current of authority as to the measure of damages, where a telegraph company condemns a railroad right of way, is in accord with the foregoing views.   Chicago, Burlington & Quincy R. Co. *v.* Chicago, 149 Ill. 457; Chicago & Northwestern Ry. Co. *v.* Town of Cicero, 157 Ill. 48; St. Louis & Cairo R. Co. *v.* Postal Telegraph Co., 173 Ill. 508; Mobile & Ohio R. Co. *v.* Postal Telegraph-Cable Co., 120 Ala. 21; Southwestern Telegraph & Telephone Co. *v.* Gulf, C. & S. F. Ry. Co., 52 S. W. 106; Texas & N. O. R. Co. *v.* Postal Tel.-Cable Co., 52 S. W. 108; Postal Tel. Co. *v.* Oregon S. L. R. Co., 65 Pac. 735; Chicago, Burlington & Quincy R. Co. *v.* Chicago, 166 U. S. 226; Mobile & Ohio R. Co. *v.* Postal Telegraph-Cable Co., 76 Miss. 731; Railroad *v.* Telegraph Co., 101 Tenn. 62; Cleveland, Cincinnati, Chicago & St. Louis Ry. Co. *v.* Ohio Postal Tel.-Cable Co., 68 Ohio St. 306; 3 Joyce on Damages, § 2204.

Plaintiff in error claims that the trial judge committed error in excluding and admitting evidence, and in charging and refusing to charge certain legal principles to the jury. It is not necessary to discuss each assignment of error; the application of the principles herein announced may be easily made to each specific assignment. The trial judge charged the jury on the measure of damages as follows: "The railroad company is entitled to recover the reasonable value of the land taken for railroad purposes,—the reasonable value to the railroad for railroad purposes as a right of way. It is entitled, farther, to recover such consequential damages as are appreciably proven, and which you can determine from the evidence, flowing from the taking of that right of way to the railroad company. That is a matter for you to determine from the evidence. I charge you, gentlemen, you are not to consider remote, contingent, and imaginary things that may never possibly happen, or that may possibly happen in the remote future." "Unless it appears from the evidence that within the present or near future there is an intention on the part of the railroad company to abandon a portion or the whole of the right of way, either in the country or the city, and sell it as private property, that an estimate based upon the possible contingency that at some time in the future the railroad company may want to dispose of its right of way for private sale or for other purposes than for purposes of a right of way is too remote and contingent to be taken into consideration in your estimate of damages in this case." "The railroad company is entitled to recover the reasonable value to the railroad company for railroad purposes of the right of way for amount of land taken and the damages that have been proven, . . for the taking of the easement by the telegraph company over the right of way,—the damage to the railroad company in the use of its right of way for railroad purposes." "Has the use to the railroad of the right of way projected by this Telegraph and Cable Company diminished to the railroad company the value of its use of the right of way for railroad purposes? If there has been no damage, or if the damage is nominal, then you would give merely nominal damages." 'If you estimate from the evidence, appreciably shown by the evidence, consequential damages resulting to the railroad company in the use of its right of way for railroad purposes by the taking of this easement, . . . then add that

amount to your estimate of the value of the land actually taken, to the railroad for railroad purposes." "The amount of land taken in this case is the amount of land occupied by the poles of the Telegraph and Cable Company and by the fixtures for guy ropes." The foregoing excerpts from the trial judge's charge to the jury fairly stated the measure of damages recoverable by the railroad company; the various rulings on the admission and exclusion of evidence were in harmony therewith; and even if any minor errors may have been committed, which is not conceded, they were not of such a character as to work a reversal of the verdict.

Plaintiff in error contends that the verdict is only for nominal damages, and for a much smaller sum than the evidence demanded. Witnesses testified as to the actual value of the land taken, allowing one square foot to the pole, and the verdict can be supported on this evidence, giving nominal damage for decrease in value of the use of the right of way for railroad purposes. In one of the Illinois cases cited (St. Louis & Cairo R. R. Co. v. Postal Telegraph Co., 173 Ill. 508), the jury returned a verdict for ninety-nine dollars for the damages sustained in erecting a telegraph line through five counties. The damage for opening a street over the railroad right of way in the populous city of Chicago was assessed at one dollar. The Supreme Court of the United States in the case of Chicago, Burlington & Quincy R. R. Co. v. Chicago, 166 U. S. 226, held that the measure of compensation was the amount of decrease in the value of the use for railroad purposes by the use for the purpose of a street, being exercised jointly with the use of the company for railroad purposes; and the compensation would be nominal if the railroad's use of its tracks were not unduly interfered with for railroad purposes by the crossing of the street.

13. The form of the verdict rendered was that prescribed by the statute for the award of the assessors. If the verdict is good in substance, its effect will not be vitiated because of any irregularity in form. The verdict, construed with the pleadings, covered the issues submitted by the judge, and is sufficiently definite. The verdict is supported by the evidence, and no reversible error of law having been committed, the judgment denying a new trial is affirmed. *Judgment affirmed. All the Justices concur.*