OTTER TAIL POWER COMPANY, a
corporation, Plaintiff and
Respondent,

v.

Ole MALME and Josephine Malme, his wife,
Jubert Malme; Harry Stern, a single man,
Joseph B. Stern and Della Stern, his wife,
Dale Slotten, Walter Williams and Clarys
Williams, his wife, Philander A. Hodgson
and Elaine O. Hodgson, his wife, Valeria
Nunns, a widow, Harold Keim; Alfred V.
Althoff and Ada Althoff, his wife; Julius
Smith and Minnie Smith, his wife, Irvin
Smith; Llewellyn Wm. Kube and Allene D.
Kube, his wife, F. B. Downing; August
Wefel and Mathilda Wefel, his wife; Mel-
vin Wefel and Iona Wefel, his wife, Or-
ville Wefel; H. H. Pfister and Rita Pfis-
ter, his wife, Jack H. Pfister and Jean Pfis-
ter, his wife, Elmer Affield, Eugene Sta-
ber, The Federal Land Bank of Saint Paul,
a corporation, The Equitable Life Assur-
ance Society of the United States, a cor-
poration, H. W. Snowden and George F.
Reeder, Defendants,

and

Ole Malme and Josephine Malme, his wife,
Jubert Malme; Harry Stern, a single man,
Joseph B. Stern and Della Stern, his wife,
Dale Slotten; Walter Williams and Clarys
Williams, his wife; Philander A. Hodgson
and Elaine O. Hodgson, his wife; Alfred
V. Althoff and Ada Althoff, his wife; Jul-
ius Smith and Minnie Smith, his wife, Irv-
in Smith; Llewellyn Wm. Kube and Allene
D. Kube, his wife; August Wefel and
Mathilda Wefel, his wife, Melvin Wefel
and Iona Wefel, his wife, Orville Wefel;
H. H. Pfister and Rita Pfister, his wife,
Jack H. Pfister and Jean Pfister, his wife,
Elmer Affield, Eugene Staber, Defendants
and Appellants.

No. 7766.

Supreme Court of North Dakota.

Sept. 29, 1958.

Rehearing Denied Oct. 31, 1958.

Josephine Malme, his wife, with Jubert Malme in possession of the property; Parcel No. 2, Harry Stern a single man and Joseph B. Stern and Della Stern, his wife, with Dale Slotten in possession of the property; Parcels 3 and 4, Walter Williams and Clarys Williams, owners, subject to a contract for deed to Philander A. Hodgson and Elaine O. Hodgson, his wife, to a part of the property, another part of which is in possession of Harold Keim; Parcel No. 5, Alfred V. Althoff and Ada Althoff, his wife; Parcel No. 6, Julius Smith and Minnie Smith, his wife, Irvin Smith in possession of the property; Parcel No. 7, Llewellyn Wm. Kube and Allene D. Kube, his wife; Parcel No. 8, August Wefel and Mathilda Wefel, his wife, subject to a contract for deed to Melvin Wefel and Iona Wefel, his wife, with the contract for deed owners in possession; Parcel No. 9, August Wefel and Mathilda Wefel, his wife. They are also owners of another parcel of property in the possession of Orville Wefel; Parcel No. 10, owned by H. H. Pfister and Rita Pfister, his wife, and Jack H. Pfister and Jean Pfister, his wife, with Elmer Affield and Eugene Staber in possession of the property.

The plaintiff alleges its corporate existence, and that it has the right to do business in the State of North Dakota; that it is engaged in the business of generating, transmitting, distributing and furnishing electrical energy for public use for light, heat, power and related uses; that it is authorized to exercise the right of eminent domain under Chapter 32–15 NDRC 1943 as amended; that it is necessary and convenient for the plaintiff for the transaction of its public business to acquire by condemnation proceedings, easements or rights of way for a power transmission line to run generally from near the City of Wahpeton to a point north of the City of Hankinson, North Dakota, which will operate at approximately 115,000 volts and will be connected with and become a part of an interconnected network of transmis-

Robert L. Eckert and Johnson & Milloy, Wahpeton, for appellants.

Bayard Lewis, Wahpeton, and Field, Arvesen & Donoho, Fergus Falls, Minn., for respondent.

JOHNSON, Judge.

This is an action in eminent domain brought by the plaintiff under Chapter 32–15 NDRC 1943, in which it seeks perpetual easements for the construction of a power transmission line, extending from north of Wahpeton, North Dakota, to near Hankinson, North Dakota. The action covers 9 separate parcels of land owned by the defendants: Parcel No. 1, Ole Malme and

sion lines owned and operated by the plaintiff, and that it is in turn interconnected with other public utilities, rural cooperatives and the Bureau of Reclamation. The complaint then alleges the general location, route and termini of the segment of the power transmission line involved, and states that it has been surveyed and located in a manner which will be most compatible with the greatest public benefit and the least private injury. The easement sought from each one of the defendant owners is described as follows:

"The perpetual easement and right-of-way for the construction, operation, maintenance, repair, or removal, of an electric power transmission line, together with the necessary two-pole structures, cross-arms, wires, insulators, guy wires, anchors, and other necessary equipment in connection therewith; together with the right to cut down or trim any trees along said transmission line necessary to keep the wires thereof clear by 30 feet and to remove any trees which could fall within 15 feet of said transmission line; and also *the right of ingress and egress over the most feasible and reasonable route for the purposes of said easement.*" (Emphasis supplied.)

By motion that was granted, the complaint was amended to eliminate the words "guy wires and anchors" from this general description of the easements.

The complaint then sets forth the description of the land on which the easements are located, by describing them by governmental subdivisions in quarter sections, 80 or 40 acre tracts, and then described the number and location of each H-frame structure to be located on each parcel of land owned by the various defendants. These H-frame structures consist of two wooden poles set in the ground thirteen feet apart from the center of one pole to the center of the next. The cross-arms of each two pole structure are to be 26 feet long. The transmission wires are suspended in the air at a minimum height of about 26½ feet, supported by the two-pole structures and running from one two-pole structure to the next two-pole structure throughout the transmission line. It is specifically alleged in the complaint that an easement only is sought, and that the owner of the fee shall have the full right to the use and enjoyment of the land, "except only as it may be inconsistent with said easement sought to be condemned." After the general description of the easement sought to be condemned, and hereinbefore set forth, the detailed facts as to each parcel of land are alleged. It is unnecessary to set them all forth herein. They are all similarly described. To illustrate the manner of description used throughout the complaint with reference to the ownership of each parcel involved, we will merely set forth the description of Parcel No. 1, owned by the defendants, Ole and Josephine Malme.

"There is hereinafter alleged, with reference to each Parcel over which an easement is sought to be condemned herein, the following facts: The legal description of each Parcel; the limitation in number of two-pole structures to be located on each Parcel; the specific location of each two-pole structure on each Parcel; the names of all owners and claimants of each Parcel as they appear of record or are known to plaintiff; the names of the holders of encumbrances, if any, and other details with reference thereto, as such information appears of record; and the names of persons in possession of each Parcel, as plaintiff is informed and believes, as follows, to-wit:

*Parcel No. 1.*

"*Description:* The Southwest Quarter (SW¼) of Section Three (3), and the Southeast Quarter (SE¼) of Section Four (4), all in Township One Hundred Thirty-two (132), of Range Forty-eight (48), Richland County, North Dakota.

"*Owners of Fee Title:* Ole Malme, whose spouse is Josephine Malme.

"*Encumbrances:* Mortgage to the Equitable Life Assurance Society of the United States, dated August 14, 1953, for the original principal amount of $10,000, and recorded in the office of the Register of Deeds of Richland County, North Dakota in Book 154 of Mortgages, on page 540.

"Oil and gas lease to H. W. Snowden covering the SW¼ of said Section 3, dated September 27, 1947, and recorded in the office of the said Register of Deeds in Book 6 of Miscellaneous, page 81.

"*Persons in Possession:* Jubert Malme.

"*Specific Limitation in Number of Two-Pole Structures and Location of Each Structure:* There shall be seven two-pole structures on Parcel No. 1, the center of which two-pole structures shall be, respectively, located as follows:

"No. 1 two-pole structure shall be located 2098 feet East of the West line of the SW¼ of said Section 3, and 75 feet South of the North line of the SW¼ of said Section 3.

"No. 2 two-pole structure shall be located 1438 feet East of the West line of the SW¼ of said Section 3, and 75 feet South of the North line of the SW¼ of said Section 3.

"No. 3 two-pole structure shall be located 778 feet East of the West line of the SW¼ of said Section 3, and 75 feet South of the North line of the SW¼ of said Section 3.

"No. 4 two-pole structure shall be located 98 feet East of the West line of the SW¼ of said Section 3, and 75 feet South of the North line of the SW¼ of said Section 3.

"No. 5 two-pole structure shall be located 552 feet West of the East line of the SE¼ of said Section 4, and 2571 feet North of the South line of the SE ¼ of said Section 4.

"No. 6 two-pole structure shall be located 1277 feet West of the East line of the SE¼ of said Section 4, and 2570 feet North of the South line of the SE¼ of said Section 4.

"No. 7 two-pole structure shall be located 2030 feet West of the East line of the SE¼ of said Section 4, and 2570 feet North of the South line of the SE¼ of said Section 4."

The defendants hereinbefore named separately answered the plaintiff's complaint. The answers are all similar. They admit that the plaintiff is a foreign corporation but otherwise deny the allegations of the complaint. They admit the ownership of the parcels of land involved; they allege that they are an integral part of a larger farming unit, and that the taking of the easements will cause damage and injuriously affect and decrease the value of the remaining land of the defendants. They specifically deny that the selection of the proposed route was necessary and convenient for the plaintiff and assert that the selection thereof was arbitrary, capricious and a gross abuse of discretion, and that it was located with total disregard to the least private injury compatible with the greatest public benefit; that there are other routes which are more logical and just as practical, and which are just as beneficial to the public and would cause less private injury. The defendants then plead the asserted value of the real estate owned by them per acre, set forth the hazards that will be created by the construction of the power transmission line, and ask for damages for the taking of each easement, for loss of crops and grass, for the use of the property pending construction, and for damages to the remainder of the farming

unit which will not be taken for the easement right of way.

The defendants, the Federal Land Bank of St. Paul, a corporation, The Equitable Life Assurance Society of the United States, a corporation, H. W. Snowden, George F. Reeder and F. B. Downing, did not answer and are in default. The action with reference to the defendants Valeria Nunns, a widow, and her tenant, Harold Keim, was dismissed.

The question of the necessity for the taking of easements for the location of the power transmission line was tried to the court without a jury, and the court found in favor of the plaintiff, declaring generally that the acquisition of the easements was necessary for the construction of the power line. Thereafter the question of the compensatory damages to be awarded each of the owner-defendants was tried to a jury and resulted in 9 separate verdicts awarding damages to the owner-defendants for the various parcels of land involved, in varying amounts. No damages were allowed to the remainder of the property of the defendants not sought to be condemned by reason of the construction of the power transmission line.

Within the time allowed by law after the entry of judgment, defendants made a motion for a new trial, specifying the errors of law upon which they claimed to be entitled thereto. They also made a motion for stay of execution and for relief from the judgment. The motion for relief from the judgment was based upon the contention that the judgment was void for the reason that the court did not have jurisdiction because of the failure of the complaint to comply with the requirements of the statutes on eminent domain, particularly Section 32–1518 NDRC 1943.

These motions were all denied. The plaintiff then made a motion for immediate possession of the property condemned and deposited in court the total amount of the verdicts. The court made its order granting immediate possession to the plaintiff.

The defendants based their motion for a new trial upon the insufficiency of the evidence to justify the verdicts and that they were so inadequate as to constitute plain disregard by the jury of the instructions of the court and the evidence; errors of law occurring at the trial; abuse of discretion by the trial court by which the defendants were prevented from having a fair trial, particularly pointing out that an error of law was involved in overruling the defendants' motion to require the plaintiff to describe its easement with accuracy and certainty, and the failure of the court to dismiss the action when the easement was not so described; abuse of discretion by the trial court in finding that the plaintiff's transmission line is located in a manner which is compatible with the greatest public benefit and the least private injury; and abuse of discretion in overruling the motion for dismissal because of the plaintiff's failure to show the necessity for the taking of the defendants' properties for a public use.

The defendants appeal from the judgment and the order denying the defendants' motion for a new trial, the order denying relief from the judgment, and the order denying the stay of execution, and from the order granting the plaintiff's motion for immediate possession.

The specifications of error on this appeal, and on which the defendants rely, are generally the same as those asserted upon the motion for a new trial, except that they are stated in greater detail. In addition thereto, the defendants allege error by reason of the denial of the motion for stay of execution; denial of their motion for relief from the judgment and the granting of the motion for possession of the property sought to be condemned to the plaintiff.

Consideration of the alleged errors specified by the defendants may be listed under three main issues:

1. Whether the transmission line was necessary for public use authorized by statute, and whether the route of the line was

reasonably surveyed and located in a manner authorized by law.

2. Whether the trial court erred in construing the plaintiff's complaint and holding that the description of the easement rights was adequate and sufficient.

3. Whether the evidence supports the jury's findings on the issues of damages.

We will discuss these issues in the order set forth.

In several states, where the legislature has delegated the power of determining the necessity of exercising the power of eminent domain, a corporation vested with that power, in absence of statutory provision requiring the submission thereof to a court or jury, the decision of the question of necessity lies with the body to whom the state has delegated the authority to take property, and generally the determination of the grantee is conclusive and not subject to judicial review except for fraud, bad faith or clear abuse of discretion. 29 C.J.S. Eminent Domain § 89, pages 882 and 883. The rule in this state is found in the early case of Bigelow v. Draper, 6 N.D. 152, 69 N.W. 570, where this court determined that the legislature had seen fit to take it out of the power of the person or corporation to settle the question of necessity, and to trust the determination of the issue to the judicial branch of the government. This is still the rule in this state. Pembina County v. Nord, 78 N.D. 473, 49 N.W.2d 665; Kessler v. Thompson, N.D., 75 N.W.2d 172, 175. It is nevertheless true that much latitude is given to the corporation vested with the right of acquiring property by eminent domain to determine the extent of the property necessary to be taken. Northern Pac. R. Co. v. Boynton, 17 N.D. 203, 115 N.W. 679.

Since a corporation vested with the right of acquiring property for a public use is entitled to much latitude in determining the extent of the property to be taken, it is entitled to the same latitude in determining the selection and location of the route for its power transmission line. Where it presents evidence showing the necessity for the taking of property for the construction of its transmission line, and such evidence indicates that the corporation vested with the power exercised good faith and used its best judgment in the selection of the route and the easements sought to be taken, and where it further appears from the evidence that the selection of the route is compatible with the greatest public benefit and the least private injury, this court, on appeal, will not disturb the trial court's findings that the plaintiff has established the necessity for the taking of the easements sought over the route selected.

While under the laws of this state necessity must be established by evidence, such necessity need not signify an impossibility of constructing the improvement for which the power has been granted without taking the land in question, but merely requires that the land be reasonably suitable and useable for the improvement. Nichols on Eminent Domain, 3rd Ed, Volume 1, pages 391 and 392. The evidence need only show reasonable or practical necessity. 29 C.J.S. Eminent Domain § 90, page 886.

The landowner may not object merely because some other location might have been made or some other property obtained that would have been as suitable for the purpose. 18 Am.Jur., Eminent Domain, Section 108, page 735; 29 C.J.S. Eminent Domain § 91, page 887.

It is clear from the evidence that the Otter Tail Power Company made careful study of the selection of the route for this particular power transmission line. It serves about 500 communities in central and eastern North Dakota, Western Minnesota and Northeastern South Dakota. It has an interconnected transmission system serving these communities with generating

plants located at strategic places throughout the system. The loading of transmission lines is increasing due to the added loads of customers, and there is a growing need for greater and larger blocks of power to transmit from point of generation to points of use.

■ In the selection of the route to be taken for the construction of the power line or transmission line involved in this action, the plaintiff took into consideration that the line as proposed by it required only four corners as compared with the alternate route suggested by the defendants, which they admit requires 5 corners. The plaintiff, however, claims that the proposed alternate route will require 7 corners. The defendants' expert, a consulting engineer, admitted that whatever route was taken for the transmission line, the line was necessary. The alternate route proposed by the defendants would accomplish the result of avoiding all the parcels of land involved except one quarter section of land. The defendants' expert witness also admitted that the plaintiff company was in a better position than he was to determine the factors that entered into the selection of a route. It appears that the plaintiff, in selecting the proposed route, took into consideration minimum interference with farmsteads, roads, the location of schools, churches, ditches and trees. Quarter lines were selected in some cases as the location of the line, as it appeared from inspection by the plaintiff that such location would avoid farmsteads, roads, churches and schools. The plaintiff also considered that the location of the line along the edge of section lines might involve possible widening or relocation of roads or highways, as experience has shown that section lines of 66 feet in width for modern road building are inadequate and frequently it is necessary and desirable to widen roads and highways in accordance with the best prevailing highway engineering practices; that it was, therefore, not expedient to locate power transmission lines along the edge of section lines. Experience had demonstrated that the location of the line far enough in on the land of the owner to avoid the necessity of moving the line in case of widening or the relocation of a road or highway was advantageous. Since that was the case it was pointed out that it made little difference whether the line was located on a quarter line or so far away from the section line in on an owner's land as to require farming on both sides of the poles. The defendant's expert also admitted that any line laid out no matter where or how located, would involve some problems.

Considering all the evidence with reference to the necessity for the taking of easements for the construction of the transmission line, we cannot say that the court's decision that the taking was necessary, was erroneous. The evidence in this case sustains the findings and the judgment of the court as to the public use of the right of way or easements proposed to be taken. Necessity for the taking of the route for the location of the transmission line was established by evidence, and it appears therefrom that the plaintiff exercised good faith and its best judgment in the selection and the location of the route to be taken and that its action was compatible with the greatest public benefit and the least private injury.

We will now determine the most crucial question in this appeal, whether the easements as set forth were sufficiently definite and accurate to comply with the law of eminent domain.

The defendants, appellants here, have strenuously and at great length argued that the easements sought by the plaintiff are not sufficiently described; that they are not described with that degree of accuracy and certainty which the law requires, placing particular stress upon the indefiniteness of that portion of the easements which states:

> "and also the right of ingress and egress over the most feasible and reasonable route for the purposes of said easement."

The burden of the appellants' argument seems to assume that the right of ingress and egress to the easements sought to be taken by this condemnation proceeding is a separate and distinct right, and that the location thereof must therefore, be described with the same degree of accuracy and particularity as the easements themselves.

The easements here involved seek the right of way for construction, operation, maintenance, repair or removal of an electric power transmission line. They locate definitely each of the two pole structures to be placed on the land of each of the defendants. The wires to be strung on the cross arms on the poles will proceed from one pole structure to the next throughout the entire length of the line. The easements also definitely locate the right to cut down or trim any trees along said transmission line, necessary to keep the wires thereof clear by thirty feet and to remove any trees which could fall within 15 feet of the transmission line. The evidence shows that the cross arms on the pole structures are 26 feet long. Thus, in effect, the plaintiff is seeking an easement over an area of 26 feet in width together with an additional area of 30 feet, 15 feet on each side of the line, to keep it clear of trees that could fall within 15 feet of the transmission line.

The designation of ingress and egress to the easements sought does not readily admit of detailed description. The location of such a right would of necessity vary from time to time, from season to season, and be subject to change depending upon the exigencies then existing.

■ One of the cardinal principles of the law of easements is that the dominant owner has the right of access to make repairs and that he may enter upon the servient estate for this purpose at all reasonable times. He may not, however, inflict unnecessary injury. 17 A, Am.Jur., Section 130, Easements, page 739. The right to maintain and repair an easement is based upon the principle that a grant of the use of a thing carries with it everything by which the grantee may reasonably enjoy the use thereof. 17 A, Am.Jur., Section 129, Easements, page 737.

■ Where the right of access to an easement or easements is not specifically granted or described, we can see no reason why these rules should not apply equally to easements obtained by condemnation as to those obtained by grant. See Collins v. Alabama Power Co., 214 Ala. 643, 108 So. 868, 46 A.L.R. 1459, 1463.

Section 32–1503 NDRC 1943 covers what estates are subject to condemnation. Subsection 2 thereof provides for the taking of an easement. Under Section 32–1502, subd. 4 NDRC 1943, the purposes for which condemnation may be exercised are set forth, one of which is a "power transmission lines". Our eminent domain statutes, therefore, grant the right to obtain an easement for a power transmission line. No mention is made in any of the eminent domain statutes of the taking of any specific property for the purpose of ingress or egress to any easement condemned. In the case of Carolina Power & Light Co. v. Bowman, 229 N.C. 682, 51 S.E.2d 191, 195, 6 A.L.R. 2d 194, dealing with obstruction of a power transmission line by a building placed on the easement right of way, the court said:

> "Ordinarily the owner of the dominant tenement has a right to the unobstructed use at all times of the subservient land for the exercise of such rights as are necessary or incident to the enjoyment of the easement. 17 A.J. 1007. The principle is well stated in the recent case of Alabama Power Co. v. Berry, 222 Ala. 20, 130 So. 541, 544: 'The easement and servitude extend to all uses directly or incidentally conducive to the advancement of the purpose for which the right of way was acquired, and the owner retains merely the title in fee, carrying the right to make such uses as in no way

interferes with the full and free exercise of the easement'."

The construction and operation of a transmission line of necessity involves maintenance and repair thereof. Its constant and efficient operation depends upon its proper maintenance and repair. Maintenance and repair of the line is conducive to the advancement of the purposes for which the easements were acquired. To accomplish proper maintenance and repair of the transmission line on the easements on which it is located, the condemnor must have the right of ingress and egress thereto.

In Atlantic Coast Line Railway Co. v. Postal Telegraph Cable Co., 120 Ga. 268, 48 S.E. 15, it was held that a telegraph company acquiring an easement to the right of way of a railway company condemned for the purpose of constructing and operating a telegraph line, embraced the land actually taken by the poles and fixtures and guy wires and the right to stretch the wires upon the poles, and to enter upon the right of way to construct and repair the telegraph line. In Cantrell v. Appalachian Power Co., 148 Va. 431, 139 S.E. 247, 248, the court quoted with approval from 9 RCL 784:

"It is an established principle that the conveyance of an easement gives the grantee all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement."

In the case of Texas Public Utilities Co. v. Bass, Tex.Civ.App., 297 S.W. 301, where a power company condemned a strip of land as a right of way for its electric transmission lines, the court pointed out that the proper instructions to the jury on the question of damages should point out that the property condemned was the right of way or easement, the essential elements of which consisted of the company's right to place and maintain its equipment thereon, the right to prohibit the erection of buildings and structures and to control all growth, other than ordinary farm crops, *the right of ingress and egress* to the strip for the operation and maintenance of the line, but not the right of occupancy of any part of the surface of the land, except the space occupied by the poles and necessary for access to the line. See also Collins v. Alabama Power Co., 214 Ala. 643, 108 So. 868, 46 A.L.R. 1459. For a somewhat analogous situation dealing with an easement for a ditch, see Laden v. Atkeson, 112 Mont. 302, 116 P.2d 881.

The right delegated to condemn right of way for the location of a transmission line and the operation thereof involves an important and constantly increasing public use. Its constant, uninterrupted and efficient operation is a very vital part of the public use involved. Its efficient operation cannot be accomplished without proper maintenance and repair. When easements are sought to be taken for the construction, operation, maintenance, repair or removal of a power transmission line, and the easements sought for the location thereof are accurately and particularly described, there arises as an incident of the taking of the easements the right of ingress and egress for maintenance and repair. This is so for the reason that it is necessary for the power company to protect the public from unnecessary hinderances to the public use intended, and to enable it to render dependable service at all times over the line. Dependable service is absolutely essential to enable the condemnor of the easements to provide the public use without undue interruption and to allow it to utilize the easements to the full extent of the purpose for which they are sought.

 The designation in the easements involved in the case at bar of the right of ingress and egress "over the most feasible and reasonable route for the purposes of said easement" actually added nothing thereto, as that right accrued as an incident to the right of operation, maintenance and repair of the transmission line. The description of the right of ingress and

egress in the manner indicated was, however, consistent with the requirement that the condemnor use only so much of the property acquired as is necessary for the purposes for which it was acquired. The condemnor may not use an easement for any purpose inconsistent with that for which it was acquired and if the condemnor does so he becomes a trespasser to the extent of the unauthorized use and is liable to the servient owner for all damages proven which results from trespass. 17 A, Am.Jur., Easements, Section 112, pages 719, 720.

The easements involved in the case at bar would have been effective to grant the right to the plaintiff of ingress and egress even though there had been a complete omission therefrom of the mention thereof. Nor does the phraseology referring to the right of ingress and egress in easements here sought limit in any way the rule that an easement sought by way of condemnation proceedings must be described with accuracy and certainty. Otter Tail Power Co. v. Von Bank, 72 N.D. 497, 8 N.W.2d 599, 145 A.L.R. 1343. In a companion case, Otter Tail Power Co. v. Baker, 72 N.D. 520, 8 N.W.2d 610, 612, this court said:

"In the Von Bank case, we held that Von Bank, under the circumstances identical with those in the instant case, had, after granting of the highway easement, the right to use the land subjected to it for agricultural purposes so only that such use did not interfere with its use for highway purposes. This holding is consistent with the general rule 'nothing passes as an incident to the grant of an easement except what is requisite for its fair enjoyment. * * * '".

■ We conclude that the easements here sought are described with such accuracy and certainty as the law requires and that the right of ingress and egress is an incident to the main purposes acquired under the easements, and is one of the elements which enters into the full, fair, reasonable and proper enjoyment of the easements. Furthermore, the right of ingress and egress is not readily susceptible of any definite description. No attempt need be made to describe the exact location thereof. Our statute, Section 32–1518, subd. 4 NDRC 1943, referring to the contents of a complaint in eminent domain, requiring that the complaint show the location, general route, and termini of the right of way sought has no application to an incidental right arising from the taking of a specific easement.

We will now determine whether the jury's verdict is supported by the evidence. The trial court submitted two issues upon which the jury was to determine the damages accruing from the taking of the easement: first, damages for each easement and right of way which was actually sought to be taken and condemned by the plaintiff, and second, damages, if any, which will accrue to the property owner of the land not sought to be condemned by reason of the construction of the proposed transmission line. The court also instructed the jury that the matter of ingress and egress was to be considered in awarding damages.

■ The evidence of damages is voluminous. We will not attempt to detail it, as to do so would unduly extend this opinion, except to point out that the difference in the testimony as to value between the owners of the land and their witness, and the witnesses of the plaintiff, presents a wide disagreement as to values. Some of the witnesses used "round figures" to set forth their estimate of the damages. Some computed a liberal acreage figure which would take care of any area that might conceivably be damaged. Others computed the damages on the basis of the number of structures involved, including one of the witnesses for the appellants. The appellants' expert, Griffith, based his estimate upon rentals similar to that used for rental of sign space. All the witnesses placed a

dollar value on the easements involved, and the appellant's witnesses testified to a large amount of value for depreciation of the land not taken. The plaintiff's (respondent here) witnesses testified that there would be no depreciation to the reasonable value of the balance of the farm owned by each of the defendants. The verdicts rendered show that in each case, the verdict was higher than the values testified to by the plaintiff's witnesses, but lower than the values placed upon the easements and the alleged damages by way of depreciation of the balance of the farm testified to by the defendants and their witness. As computed this difference is very great. Defendants claim damages which when applied to all the tracts of land involved, amounts to $84,272. The plaintiff's witnesses testified to values that would total $3,820.26. The total verdicts rendered amount to $7,935. Thus we can see that the jury had before them a wide range of values. The jury was entitled to exercise its own judgments as to values.

██ There was competent evidence in the record that the value of the easements was much less than that fixed by the jury, and there was also evidence in the record that the taking of the easements would not depreciate the balance of the land owned by any of the defendants. On the other hand, the verdicts of the jury are more than twice the amount of the value placed upon the easements by the plaintiff. In view of this conflict in the evidence, the verdicts must stand. It was peculiarly within the province of the jury to determine all questions of damages that accrued to the defendants by virtue of the taking of the easements, and there is ample evidence to sustain the verdicts. City of Bismarck v. Casey, 77 N.D. 295, 43 N.W.2d 372. See also Montana-Dakota Utilities Co. v. Amann, N.D., 81 N.W.2d 628; Minnkota Power Co-op v. Bacon, N.D., 72 N.W. 2d 880; Montana-Dakota Utilities Co. v. Culver, N.D., 80 N.W.2d 541.

The trial court in its memorandum decision rendered upon the motion for a new trial, summed up the situation as follows:

"Three witnesses for the plaintiff testifying as to values of the easement taken and giving as their opinion no damages to the balance of the property not taken by the easement, the jury in the case at bar had a large range of values placed before it by the owners of the land and the one expert testifying for the answering defendants and the values placed by plaintiff's witnesses. The fact that they did not accept the answering defendants' values nor the values as given by the witnesses for the plaintiff shows conclusively that they exercised their independent judgment, weighed the values that were before them, and arrived at their verdict after a fair consideration of the evidence."

██ After taking into consideration all of the evidence presented by both parties to this action, and the conflicts therein, we cannot say that the jury's verdicts are so inadequate that they constitute a miscarriage of justice. They are within the range of the evidence and the instructions of the court, to which no exceptions were taken. These instructions have now become the law of the case. While the jury allowed no damage to any of the defendants to the balance of the property not taken, its findings in that regard are within the evidence. There was ample evidence on which they could make such a finding. The trial court's determination that there was no basis for the granting of a new trial was clearly an exercise of its sound judicial discretion and was based upon the evidence before it. Whether a new trial should be granted upon ground of the insufficiency of the evidence rests largely in the sound discretion of the trial court, and unless abuse of discretion is shown, action of the trial court will not be disturbed. Robbins v. Robbins, N.D., 70 N.W.

2d 37. The denial of a motion for a new trial does not constitute error, where the evidence is conflicting and is ample to sustain the verdict. Burdick v. Mann, 60 N.D. 710, 236 N.W. 340, 82 A.L.R. 1443.

The defendants objected to the testimony of the witnesses, John Randall and Gilbert Movius, on the ground that there was no foundation laid for the reception of the same, and that they were not expert witnesses.

■ In the case of City of Bismarck v. Casey, 77 N.D. 295, 43 N.W.2d 372, 375, this court quoted the rule with reference to the qualification of witnesses stating:

> " 'It is well settled that whether a witness offered as an expert is qualified to give an opinion rests very largely in the discretion of the presiding judge, whose decision will not be reversed unless clearly erroneous as a matter of law.' " (See authorities cited.)

■ Opinion evidence in eminent domain actions is usually admitted from persons who are not strictly experts, but who from residing and doing business in the vicinity have familiarized themselves with land values and are more able to form an opinion on the subject at issue than citizens generally. The rule is liberally applied in case of farm lands, as other evidence is often not easily obtained and neighboring farmers are able to judge values with reasonable accuracy if acquainted with the physical surroundings and the character of the soil. 18 Am.Jur., Eminent Domain, Section 355, pages 999, 1000.

■ The admission of the testimony of Mr. Randall as to values of the easements sought was not erroneous, as he had farmed and his testimony indicated familiarity with land values that enabled him to form an opinion on the subject at issue. The testimony of Mr. Movious was also admissible as he had been in the real estate and insurance business for thirty years and showed considerable familiarity with the land over which the plaintiff was seeking easements. The competency of the witnesses testifying as to value of land taken in eminent domain is primarily for the court. 18 Am.Jur., Section 355, page 1000.

■ The defendants allege error by reason of the denial of stay of execution and also because the plaintiff was granted possession of the property taken pending appeal. Since the plaintiff had established the necessity for the taking of easements for the construction of its transmission line, and paid into court the damages awarded by the jury for the taking of the easements for the construction of the line, as a matter of law, the court was authorized by statute to grant plaintiff immediate possession of the property sought to be condemned pending appeal. Section 32–1529 NDRC 1943. The court simultaneously with the order granting possession, denied a stay of execution of the judgment. Having determined that it would grant possession, it naturally followed that stay of execution should be denied. Under the trial court's order granting immediate possession, the plaintiff, upon payment of damages assessed, was entitled to enter into, improve and hold possession of the property sought to be condemned and to devote the same to the public use in question pending appeal. Section 32–1534 NDRC 1943.

The judgment of the trial court is affirmed.

GRIMSON, C. J., and BURKE, SATHRE and MORRIS, JJ.