JOHN DRAKER, Appellant, v. IOWA ELECTRIC COMPANY, Appellee.

**EMINENT DOMAIN:** Compensation—In re Electric Transmission
1 Lines. A franchise granted by the railroad commissioners, under Sec. 2120-n, Code Supp., 1913, to construct and maintain an electric transmission line, arms the franchise holder with power to condemn and to take possession of land *only to such extent* as will enable such holder to construct, reconstruct, and maintain said line. All *other* dominion, including the right of cultivation, remains in the fee owner. It follows that compensation for the condemnation must not be made on the theory that the condemnor acquires a right equal to the right acquired by a condemnor for railway purposes.

**ELECTRICITY:** Electric Transmission Lines—Damages to Crops. The
2 provisions of Sec. 2120-t, Code Supp., 1913, require the condemnor of land for the construction and maintenance of electric transmission lines to pay to the fee owner damages resulting to crops both *on* and *outside* the strip of land condemned.

**EMINENT DOMAIN:** Compensation—Excluding Future-Accruing Dam-
3 ages. Excluding future-accruing damages to crops as an element of compensation in the condemnation of land for the construction and maintenance of electric transmission lines, and requiring the condemnor to pay such damages annually to the fee owner, and *after* they accrue, do not constitute a denial of the fee owner's right to have compensation first paid or secured.

**EMINENT DOMAIN:** Nature and Extent of Power—Partial or Limited
4 Condemnation. The legislature may constitutionally authorize a *limited* condemnation, and provide for compensation accordingly.

**TRIAL:** Course and Conduct—View of Premises. The court may very
5 properly permit the jury, in eminent domain proceedings, to view the premises sought to be condemned.

**COSTS:** Extent of Right—Offer to Confess Judgment. An offer by a
6 condemnor in eminent domain proceedings to confess judgment for *damages* and costs in a named sum, casts subsequently accruing costs upon the rejecting claimant, in case his recovery does not exceed the offer.

*Appeal from Johnson District Court.*—R. G. POPHAM, Judge.

MAY 12, 1921.

REHEARING DENIED OCTOBER 1, 1921.

PROCEEDING in condemnation of right of way or easement across appellant's land, for the erection thereon of poles and wires to carry electric current for light, power, and heating purposes, under Chapter 174, Acts of the Thirty-fifth General Assembly. From an award of damages by a jury, plaintiff prosecutes this appeal.—*Affirmed.*

*Baldwin & Baldwin,* for appellant.

*Dutcher, Davis & Hambrecht,* for appellee.

ARTHUR, J.—A sheriff's jury awarded plaintiff, appellant, $100 as compensation and damages in a condemnation proceeding instituted by the defendant, condemning a strip of land 25 feet wide across plaintiff's farm, for the purpose

1. EMINENT DO-MAIN: compensation: *in re* electric transmission lines.

of the erection thereon and maintenance of an electric transmission line, with the right of ingress to and egress from said line over and across other land of plaintiff abutting thereon. From the award of the sheriff's jury, the plaintiff appealed to the district court, where the case was tried to a jury. The jury returned a verdict allowing plaintiff $200 as compensation and damages. This appeal is taken from such award.

The question involved was the amount of damages suffered by plaintiff. By agreement between the parties, the right of ingress to and egress from the 25-foot strip, upon plaintiff's land abutting thereon, was agreed upon and surrendered, and the case did not involve the rights of the defendant on the plaintiff's land, except rights on the 25-foot strip.

The defendant is a corporation, organized under Chapter 174, Acts of the Thirty-eighth General Assembly (Code Supplement, 1913, Sections 2120-n to 2120-t, inclusive), engaged in the manufacture, sale, and distribution for sale of electric current for light, power, and heating purposes. Defendant com-

pany filed its petition with the railroad commissioners of the state of Iowa, as required by said act, and was granted a franchise to acquire the necessary interests in real estate of any person for its poles, wires, and other constructions. The franchise was granted by the railroad commission, and is as follows:

"To construct, reconstruct, use, maintain, and operate a high potential electric transmission line, together with the necessary guy wires and appurtenances of said line and together with the right of ingress and egress to said line, over and across the lands abutting upon said line for the distribution for sale of electric current for light, heat, and power purposes, * * * along and upon a strip of land 25 feet in width lying easterly of and abutting upon the easterly side of the right of way of the Chicago, Rock Island & Pacific Railway Company * * * over and across the lands hereinafter described, which lands are owned by the persons hereinafter described: [then follows the description of the plaintiff's lands] owned in fee simple by John Draker and Carrie Draker, with approximately 15 poles and 4 guy wires located on said premises, the center line of said poles to be parallel to and not more than 3 feet removed from the easterly side of the Chicago, Rock Island & Pacific Railroad Company's right of way running through said land from the said easterly side of said right of way."

Pursuant to the franchise granted to it, the defendant proceeded under Section 2120-q, which authorizes:

"Any person or corporation having secured the franchise provided for in the preceding sections shall thereupon be vested with the right of eminent domain to such extent as may be necessary and as prescribed and approved by the commission, not exceeding 25 feet in width, to carry out the purposes of said franchise."

Plaintiff's farm is crossed by the right of way of the Chicago, Rock Island & Pacific Railway Company, 100 feet wide, running approximately north and south. The 25-foot strip over which the defendant secured its rights lies immediately east of the railway company's right of way, and extends for a distance of 124 rods, parallel with said right of way. The strip on which the easement is laid contains one and one-sixth acres of land.

The only ultimate question involved in the case was the amount of damages suffered by plaintiff. Plaintiff assigns numerous errors. Most of the assignment challenges the theory of the case taken by the trial court, the rulings of the court on the admission of testimony, and the instructions submitting the case to the jury.

Assignments of error Nos. 1 and 2 are directed to Instructions 1 and 4 given by the court. The court instructed the jury in substantially the language of Section 2120-t of the Supplement of 1913, that corporations operating the lines shall have a reasonable access to such transmission lines for the purpose of constructing, reconstructing, repairing, or locating the poles, wires, or other construction or devices used in and upon said transmission, but shall pay the owner of said land and the owner of the crops thereon, all the damages to said land or crops caused by entering, using, and occupying the land for such purposes, such damages, if any, to be paid annually at the end of the season; and instructed the jury, as to the measure of damages, that it should presume that "the defendant company will perform the duties imposed upon it, in construction and maintenance of its line, and if it destroys any crops growing on said premises, compensation therefor shall be rendered." So that, in estimating damages, the jury should not take into account any damages which the plaintiff may have sustained by reason of the destruction of crops, nor should the jury anticipate future damages arising from the destruction of crops, nor damages to the land.

Plaintiff's first contention is, as we understand him, that the court was confused in the instructions, and erroneously construed Section 2120-t to provide for compensation for crops on the 25-foot strip, when its provisions are, according to plaintiff's interpretation, confined to damages to crops on the abutting land, caused by ingress and egress in getting to and from the 25-foot strip. We think it was not the court who was confused; that the court correctly interpreted the statute in his instructions, to provide for compensation for crops growing on the 25-foot strip, and also upon the ground used for ingress to and egress from the 25-foot strip.

2. ELECTRICITY: electric transmission lines: damages to crops.

Plaintiff urges further that, if the construction adopted by the court, that Section 2120-t does attempt to provide for damages to crops on the 25-foot strip, is correct, it is repugnant to Section 18 of Article .1 of the Constitution of Iowa, because it is the taking of private property "without just compensation first being made, or secured to be made, to the owner."

The major point that plaintiff makes is that, by postponing payment of compensation for damages to the crops on the 25-foot strip to await actual damage, Section 2120-t authorizes the taking of private property without first making just compensation, as required by Section 18, Article 1 of the Constitution; and alternately, that, if said Section 2120-t is not unconstitutional, the court erred in making it applicable to damages to crops on the 25-foot strip, plaintiff contending that said section refers only to the damages to crops located on property of plaintiff abutting on the 25-foot strip, caused by ingress to and egress from said strip. As stated above, we cannot agree with plaintiff's contention that the section applies only to damages to crops on the property passed over, to get onto the 25-foot strip. The court was correct in its interpretation that it applied to the 25-foot strip.

Plaintiff's theory in argument that the section is repugnant to the Constitution is, as we understand him, that damages for the right of way or easement condemned must be assessed once for all. Plaintiff's theory is that, while the defendant, by its franchise, does not acquire the fee title to the 25-foot strip, it does acquire the entire possession and control of it. Defendant's theory of the statute is that only such interest in the 25-foot strip is acquired by it as is necessary for the purpose of erecting and maintaining its line; and that was the theory adopted by the trial court. Such theory seems to be borne out by the statutory provisions. Before such necessary interest in the land can be acquired, a petition must be presented to the railroad commissioners, setting forth the manner, method, and specifications for construction of the line; and the statute then authorizes the commission to grant the application, either as a whole or in part, or upon such conditions as to terms and location as to the commission may seem right and just. Section 2120-n provides that:

"The privilege granted by the commission shall be and constitute a franchise to operate and maintain the proposed transmission line, but all rights granted by said franchise shall be subject to the provisions of this act, and also to such regulations as the legislature may, from time to time, prescribe, either by direct legislative enactment or by and through the railroad commission, under the laws of Iowa now or hereafter in force."

Defendant company procured its franchise in the manner provided by the statute, and it was granted the privilege to erect, maintain, and operate across the plaintiff's farm approximately 15 poles and 4 guy wires, to be parallel to and not more than 3 feet removed from the easterly side of the Chicago, Rock Island & Pacific Railway Company's right of way running through said land, and the guy wires to be set in 8 feet from the easterly side of the right of way. Having acquired its franchise, with specifications for the construction of the line, the defendant invoked the provisions of Section 2120-q, which provides:

"Any person or corporation having secured the franchise provided for in the preceding sections shall thereupon be vested with the right of eminent domain to such extent as may be necessary, and as prescribed and approved by the commission, not exceeding 25 feet in width, to carry out the purposes of said franchise."

Plaintiff's claims in his assignments of error are, broadly speaking, except assignments referring to particular matters which will hereinafter be referred to, that the court assumed that there was not a full taking by the defendant of the 25-foot strip, but that the defendant acquired only part possession of it, and that such possession as the defendant did not acquire was left in the plaintiff. Plaintiff argues that the defendant, having condemned the strip, may use all of it in any way it deems necessary, not only for the original construction of the line, but for reconstruction of its line or enlarging of the same; that there was an actual, physical, and complete taking of the entire 25-foot strip; and that the jury should have been so instructed. Plaintiff contends that, after the condemnation was made, he had no greater rights in the 25-foot strip than he would have, had it been a railroad company that condemned it, and the strip

fenced by the railroad company and used as railway companies use a right of way; and that, therefore, the plaintiff, although retaining the fee, was deprived of the entire possession of the 25-foot strip; and that compensation should be assessed on that basis. Plaintiff's position is not tenable. The company did not acquire the exclusive use of the 25-foot strip, but only the necessary interest in the land to enable it to exercise its franchise, subject to the restrictions and limitations contained in the specifications. The statute does not confer upon the company the right to acquire the exclusive use of the 25-foot strip, but only the right to acquire whatever interest in it may be necessary, to construct, maintain, and operate a line such as described in its petition asking for franchise. The whole theory of the statute is that only such interest in the real estate is to be acquired as is necessary for the purpose of erecting and maintaining its line. This theory is further supported by the part of the act which leaves the regulation of the construction and operation of the line entirely under public control. It was not intended that, because the line of wires was to be suspended over agricultural land, the land under it should not be cultivated; and the statute clearly contemplates that the owner of the land reserves the right to use it for agricultural or other purposes, subject to such physical limitations as the presence and maintenance of the line entail. Section 2120-o of the Code Supplement, 1913, provides for additional rights and the method of acquiring them. This section contemplates that, if the business of the company should subsequently require two or more lines of poles, the company can condemn additional rights in the 25-foot strip for that purpose, and it would then have to pay the damages for the additional interference with the use of the land by the owner.

The case was tried on the theory that the plaintiff had a right to raise crops upon this 25-foot strip, and make any other use of it he pleased, not in disturbance of defendant's franchise privilege. Plaintiff's main criticism of the court's rulings and instructions is against such theory, plaintiff insisting that the defendant acquires full possession and use of the 25-foot strip, all rights and interests therein except the fee, and that plaintiff is entitled to compensation accordingly. We think that the

theory adopted by the court was correct, and is supported, not only by previous sections quoted, but also by Section 2120-r, which requires that the transmission line shall be constructed so as not to "unnecessarily interfere with the use of any lands by the occupant thereof." This provision would not have been necessary, if it was the intention that the 25-foot strip of ground was to be dedicated wholly to the use of the company, and the owner was to be excluded from its use. Our legislature, in its wisdom, has provided in these sections for an easement, the extent of which is to be prescribed in the franchise, and has authorized the condemnation of the necessary interest in a strip of ground, not exceeding 25 feet in width, to permit the exercise of the franchise. If, in the exercise of the franchise, the company destroys crops planted upon the 25-foot strip, the statute prescribes the liability therefor, and provides a remedy in Section 2120-t.

Plaintiff strenuously argues that, by postponing payment of compensation for damages to crops on the 25-foot strip to await accruing of actual damage, the right acquired in the land by the condemnation is not fully compensated for, and is, therefore, the taking of private property without complying with Section 18, Article 1, of the Constitution. We think the denial of the right to have future damages to crops, incident to the use of the easement, included in the damages for the taking of the easement in the first instance, is not a denial of the right of the owner to have just compensation first paid or secured, under Section 18, Article 1, of the Constitution. Plaintiff retains all possession and use of the strip not acquired by the company, and he may go upon it, plant it to crops, and make any other use of it that he can, outside of the company's use of it, granted by its franchise. Damages to crops during the life of the franchise would be too remote and speculative to be capable of assessment in a lump sum. Crops growing on land bordering on the right of way of a railway are always liable to injury from fire; but no provision is made forbidding the owner to be first paid the damages anticipated to crops by fire, in the operation of a railway, before a right of way can be taken by the railway under condemnation proceedings. But the probability of the

3. EMINENT DO-
MAIN: com-
pensation: ex-
cluding future-
accruing dam-
ages.

occurrence of such damages in the future affects the market value of the property, and may be taken into consideration by the jury in arriving at its verdict. We think that the statutes are not unconstitutional because they do not include future damages to crops as a part of the compensation to be first awarded to the owner.

Plaintiff urges that the act is unconstitutional on the ground that it permits the company to take less than the full possession, and to pay for less than the value of the full possession of the 25-foot strip. We think the act is not vulnerable to that attack. The statutory provision that the condemnor may take less than he might take,—the full possession,—and thus minimize damages, is not repugnant to the Constitution. Supporting, see *Tyler v. Inhabitants of Hudson,* 147 Mass. 609; *Sixth Ave. R. Co. v. Kerr,* 72 N. Y. 330; *Washington Cem. v. Prospect Park & C. I. R. Co.,* 68 N. Y. 591; *McGregor v. Equitable Gas Co.,* 139 Pa. 230; *Penn G. C. Co. v. Versailles F. G. Co.,* 131 Pac. 522.

*4. EMINENT DO-MAIN: nature and extent of power: partial or limited condemnation.*

Plaintiff assigns as error that the court did not specifically tell the jury not to consider benefits following from the erection of the line. Upon examination of the record, we find that the court did, in Instruction No. 5, and also in Instruction No. 10, specifically tell the jury "not to consider benefits, if any, to said real estate by the erection of said line," in considering and arriving at the damages, and to "exclude any benefits that may accrue to the plaintiff by reason of the erection and maintenance of said line."

Plaintiff complains that the court erred in sending the jury to view the premises. The court has wide discretion in the matter of permitting a jury to view property which is the subject of controversy, as indicated by the statute, Code Section 3710. The court properly instructed the jury as to viewing the premises. Permitting the jury to view the premises was not error. *Clayton v. Chicago, I. & D. R. Co.,* 67 Iowa 238; *King v. Iowa M. R. R. Co.,* 34 Iowa 458.

*5. TRIAL: course and conduct: view of premises.*

Plaintiff complains of the action of the court in taxing costs to him that were made after defendant's offer to confess judg-

ment. The sheriff's jury awarded plaintiff $100 damages, and
6. COSTS: extent   he appealed to the district court, where he was
of right: of-   awarded $200. Before the commencement of
fer to confess
judgment.   the trial in the district court, defendant offered
to confess judgment for $275 and costs, which offer was refused.
The court rendered judgment for plaintiff for $200 and costs
incurred at the time of the offer to confess judgment, including
attorney's fees in the amount of $29.75, and taxed the plaintiff
with costs incurred after said offer to confess judgment, in the
amount of $97.80. Plaintiff's counsel takes the position that
the trial in the district court was merely a continuation of the
condemnation proceedings; and that attorney's fees and costs
are a part of the purchase price of the land condemned; and that
the taxation of costs is controlled by Section 2007 of the Code;
and that Code Section 3818, as to offer to confess judgment, does
not apply to condemnation proceedings. Undoubtedly, his posi-
tion is correct that the trial in the district court was a continu-
ation of the condemnation proceedings (*Gano v. Minneapolis &
St. L. R. Co.*, 114 Iowa 713, 724), and that Section 2007 pro-
vides that the company shall pay all costs of the assessment
made by the commissioners, and also those occasioned by the ap-
peal, where the assessment of damages is increased on the ap-
peal. Counsel for plaintiff relies upon *Gano v. Minneapolis &
St. L. R. Co.*, supra, and *McCaskey v. Ft. Dodge, D. M. & S. R.
Co.*, 154 Iowa 652, and cases cited from other jurisdictions, to
support his position. In none of these cases was there an offer
to confess judgment, or a tender made. These cases do not in-
volve the precise question before us. *Harrison v. Iowa M. R. R.
Co.*, 36 Iowa 323, was a condemnation case, where taxation of
costs following an offer to confess judgment and refusal arose,
as in this case. The question has not since been raised until
now. In that case, Section 3404 of the Revision was under con-
sideration, which is substantially the same as Section 3818 of the
Code. We said:

"After the appeal was taken, the defendant filed in the cir-
cuit court an offer to confess judgment for the sum of $350,
pursuant to the provisions of Section 3404 of the Revision. The
plaintiff, upon the trial, having failed to recover as much as
was thus offered to be confessed, the court taxed to him the

costs which accrued subsequently to the offer. Appellant claims that the appeal was not an action for the recovery of money, in such sense as to be governed by the provisions of Section 3404. This position we believe to be unfounded. The damages had been assessed by the commissioners, and the amount awarded paid to the sheriff. By such payment, the right of the defendant to the way over plaintiff's premises was established. The right was not suspended by the appeal. * * * The action was for the recovery of money, and it falls within the spirit of the provisions of Section 3404. It would too much narrow this statute to put upon it the construction asked by appellant. The objects of the statute are to encourage settlements of disputes, put an end to litigation, and prevent the accumulation of costs, and it should receive a liberal construction in furtherance of these objects.''

We have not discussed plaintiff's assignments of error *seriatim*, but we have considered and discussed all questions involved in them.

We find no reversible errors in the rulings of the court or in the instructions. The judgment of the trial court is affirmed. —*Affirmed.*

EVANS, C. J., STEVENS and FAVILLE, JJ., concur.