SMB INVESTMENTS, an Iowa General Partnership Composed of Lawrence J. Meade, Robert McGurk, and Jake Bustad, Appellant,

v.

IOWA–ILLINOIS GAS AND ELECTRIC COMPANY, Appellee.

No. 67526.

Supreme Court of Iowa.

Feb. 16, 1983.

As Corrected Feb. 23, 1983.

William L. Meardon and Thomas D. Hobart of Meardon, Sueppel, Downer & Hayes, Iowa City, for appellant.

Donald H. Sitz and Terry M. Giebelstein of Lane & Waterman, Davenport, for appellee.

LARSON, Justice.

SMB Investments owned farmland in Muscatine County over which Iowa-Illinois Gas and Electric Company proposed to build a high-voltage transmission line. SMB challenged the condemnation notice on statutory and constitutional grounds. The district court rejected these challenges, denying SMB's motions for judgment on the pleadings and to adjudicate law points. On appeal from those rulings SMB raises two issues: (1) the notice failed to adequately advise SMB of the extent of the interest sought to be acquired, and (2) it failed to adequately describe the locations of the ingress and egress incident to the easement. It claims the notice did not comply with the requirements of Iowa Code section 472.8 and that the proceedings based upon the notice deprived it of due process under the United States and Iowa constitutions. We agree with the district court: the notice substantially complied with section 472.8 and did not deny SMB its constitutional rights of due process.

Iowa-Illinois is a public utility empowered to condemn real estate for construction of its transmission lines. *See* Iowa Code chapter 478. Notice of the condemnation process is required to be served upon parties claiming interests in the land by ten days' notice, advising of the time when the condemnation commission will view the property, and served in the same manner as original notices. Iowa Code § 472.8. The manner of service is not challenged here, only the form of the notice.

Iowa Code section 472.9 prescribes the form of notice:

Said notice shall be in substantially the following form, with such changes therein as will render it applicable to the party giving and receiving the notice, and to the particular case pending, to wit:

"To ...... (here name each person whose land is to be taken or affected and each record lienholder or encumbrancer thereof) and all other persons, companies, or corporations having any interest in or owning any of the following described real estate:

(Here describe the land as in the application.)

You are hereby notified that ........ (here enter the name of the applicant) desires the condemnation of the following described land: (Here describe the particular land or portion thereof sought to be condemned, in such manner that it will be clearly identified.)

That such condemnation is sought for the following purpose: (Here clearly specify the purpose.)

That a commission has been appointed as provided by law for the purpose of appraising the damages which will be caused by said condemnation.

That said commissioners will, on the ........ day of .........., 19...., at ........ o'clock ....m., view said premises and proceed to appraise said damages, at which time you may appear before the commissioners if you care to do so.

Applicant."

The notice to SMB was entitled "In the Matter of the Application of Iowa-Illinois Gas and Electric Company for Condemnation of *Right of Way for Transmission Line in Muscatine County, Iowa.*" (Emphasis added.) It advised SMB that

such condemnation is sought for the construction, operation and maintenance of a 362,000 volt electric transmission line and all necessary wires and equipment incident thereto, *together with the permanent and perpetual right of ingress and egress to and from said property* for the

purpose of constructing, operating and maintaining said transmission line and associated wires and equipment incident to the operation and maintenance of said transmission line.

(Emphasis added.) The notice provided a legal description of the 150-foot strip of land required for construction of the line and advised SMB of the date and place of the commissioner's viewing of the property, pursuant to section 472.8. The body of the notice did not state what interest was being sought, that is whether it was fee simple or merely an easement, nor did it give a precise location for the "perpetual right of ingress and egress" to which it referred.

I. *Designation of Extent of Owner's Interest to be Condemned.*

SMB argues first that the defendant's notice of condemnation does not comply with Iowa Code section 472.9 because it failed to specify the property interest sought by Iowa-Illinois. SMB points to the statutory form of notice set out in section 472.9 parenthetically requiring the notice to "describe the particular land or portion thereof sought to be condemned, in such a manner that it will be clearly identified" and argues that "the condemnor [must] apprise the condemnee in the notice of condemnation not only of the description of the parcel to be acquired but also the interests in the parcel which the condemnor seeks."

While statutory provisions regulating the exercise of eminent domain must be strictly complied with, *City of Des Moines v. Geller Glass,* 319 N.W.2d 239, 242 (Iowa 1982), this does not necessarily mean literal compliance with the notice statute is required; substantial conformity is sufficient. *Koss v. City of Cedar Rapids,* 271 N.W.2d 730, 735 (Iowa 1978); *Bourjaily v. Johnson County,* 167 N.W.2d 630, 633 (Iowa 1969).

Iowa-Illinois' notice stated in the caption that it was "for Condemnation of a *Right of Way* for Transmission Line in Muscatine County, Iowa." (Emphasis added.) The term right of way, when used in reference to the right to pass over another's land, is synonymous with the term ease-

ment. *See Hawk v. Rice,* 325 N.W.2d 97, 99 (Iowa 1982); *Draker v. Iowa Electric Co.,* 191 Iowa 1376, 1382, 182 N.W. 896, 899 (1921); *Clark v. Wabash Railroad Company,* 132 Iowa 11, 13, 109 N.W. 309, 310 (1906); *Kleih v. Van Schoyck,* 250 Wis. 413, 418, 27 N.W.2d 490, 493 (1947); *see also,* Annot., 89 A.L.R.3d 767 (1979). In its strict meaning, "a right of way means the right to pass over another's land. It is only an easement, and the grantee acquires only the right to a reasonable and usual enjoyment thereof. The owner of the soil has all the rights and benefits of ownership consistent with the easement." *Minneapolis Athletic Club v. Cohler,* 287 Minn. 254, 257, 177 N.W.2d 786, 789 (1970). We believe the notice substantially complied with section 472.9 in its specification of the nature of the interest; the reference to right of way in the notice caption sufficiently alerted SMB to the interest sought. Moreover, if SMB had any doubts as to what nature of interest was being sought, it could have merely looked at Iowa-Illinois' application for condemnation filed with the chief judge of the district under Iowa Code section 472.3, which stated that "[a]pplicant seeks to condemn . . . a right of way and easement. . . ."

The district court properly concluded the notice was not defective on this ground.

II. *Description of Ingress and Egress.*

SMB also asserts that the notice is deficient because, while it described the easement itself, it did not specify the location or extent of the ingress and egress requested by Iowa-Illinois. Iowa-Illinois requested condemnation of the easement "together with the permanent and perpetual right of ingress and egress to and from said property for the purpose of constructing, operating and maintaining said transmission line and associated wires and equipment incident to the operation and maintenance of said transmission line." The location of the ingress and egress route was not specified.

The ingress and egress right which Iowa-Illinois seeks is known as a "secondary easement," an incident to its easement for the transmission line itself. As one authority explains:

The right to enter upon the servient tenement for the purpose of repairing or renewing an artificial structure, constituting an easement, is called a "secondary easement," a mere incident of the easement that passes by express or implied grant, or is acquired by prescription. The owner of the dominant estate may enter on the servient tenement, and there do any act necessary for the proper user of the easement. This secondary easement can be exercised only when necessary, and in such a reasonable manner as not to needlessly increase the burden upon the servient tenement. The grant of the easement carries with it by implication whatever incidental right is necessary to its beneficial enjoyment, provided the grantor has power to bestow it.

Thompson, *Real Property* § 428, at 706 (1961). *See also* 25 Am.Jur.2d *Easements and Licenses* § 86, at 492–93 (1966):

In order that the owner of the easement may perform the duty of keeping it in repair, he has the right to enter the servient estate at all reasonable times to effect the necessary repairs and maintenance . . . of the easement. Such right is an incident of the easement, and is sometimes called a "secondary easement."

*See generally Nixon v. Welch,* 238 Iowa 34, 40–43, 24 N.W.2d 476, 479–80 (1947) (implied easement to enter land subject to waterway easement for purposes of maintaining flowage); *Bina v. Bina,* 213 Iowa 432, 437, 239 N.W. 68, 70 (1931) (right to enter to maintain the private right of way). This secondary easement right may be obtained as an incident to an easement acquired by eminent domain, as well as one obtained by conveyance.

The right of way for a transmission line includes the right to maintain and service the line. Every reason of public policy in favor of ways of necessity for ingress and egress over the grantor's lands where he has conveyed inaccessible lands to another applied to a right acquired by eminent domain.

3 Nichols, *The Law of Eminent Domain* § 11.204, at 11–24, 25 (3rd ed. Sackman

1981). *See also Moore v. Indiana and Michigan Electric Co.,* 229 Ind. 309, 314, 95 N.E.2d 210, 212 (1950) (right of way for transmission line includes right of ingress and egress; principle applies whether required by condemnation or grant).

In Iowa, this common-law principle is recognized in Iowa Code section 478.17:

Individuals or corporations operating such transmission lines shall have reasonable access to the same for the purpose of constructing, reconstructing, enlarging, repairing, or locating the poles, wires, or construction and other devices used in or upon such line, but shall pay to the owner of such lands and of crops thereon all damages to said lands or crops caused by entering, using, and occupying said lands for said purposes. Nothing herein contained shall prevent the execution of an agreement between the person or company owning or operating such line and the owner of said land or crops with reference to the use thereof.

Because of the uncertainty of future requirements of ingress and egress, particularly as to the locations where the secondary easement may be necessary, it is also been referred to as an "unlocated" easement. *See* 26 Am.Jur.2d *Eminent Domain* § 138, at 803 (1966) ("A transmission company may acquire by condemnation an unlocated or secondary easement of ingress and egress over land for the purposes of construction and maintenance of this transmission line on such land.") *Accord Virginia Electric and Power Co. v. Webb,* 196 Va. 555, 563, 84 S.E.2d 735, 741 (1954).

There is authority to support a claim for damages, in the condemnation proceedings, for diminution of value in the remaining land due to the existence of a secondary easement. *See Draker,* 191 Iowa at 1383–84, 182 N.W. at 899 ("[T]he probability of the occurrence of damage [by entry to maintain an easement] in the future affects the market value of the property and may be taken into consideration by the jury in arriving at its [condemnation] verdict."). SMB did not, however, challenge the amount of condemnation damages. In fact,

it did not even appear in the proceedings to assert a claim for such damages. It merely boycotted the proceedings, contending the lack of legal description rendered the notice of condemnation void. The issue, therefore, is not whether SMB was entitled to damages for this secondary easement, but simply whether the notice of condemnation was defective for failing to describe it. In other words, was the condemnation notice adequate to comply with the requirement that it "describe the particular land or portion thereof sought to be condemned" under Iowa Code § 472.9?

The general rule is that the ingress and egress routes need not be described in condemnation proceedings:

> When, as usually happens, only part of a particular parcel of land is sought to be taken, it is not necessary to describe the entire parcel, but only that part of it which is required for the particular use. Neither is it necessary to describe property which will be damaged if the proposed improvement is constructed.
>
> . . . .
>
> Where a right of way is sought to be acquired it is essential that the courses and distances be accurately set forth and the termini fixed with definiteness and certainty. However, where an accurately described easement is set forth, the description of ingress and egress to the easement sought does not readily admit of detailed description. The location of such a right would of necessity vary from time to time, from season to season, and be subject to change depending upon the exigencies then existing.

6 Nichols, *supra* § 26.112, at 26–60, 61.

In *Otter Tail Power Company v. Malme*, 92 N.W.2d 514 (N.D.1958), this precise issue was raised; the location of the proposed transmission line was specifically described, but the ingress and egress routes were not. The court noted the practical problems in requiring a description of the ingress and egress rights discussed in *Nichols*. It also relied upon the principle of the secondary easement and concluded it was not a separate and distinct interest required to be

sought through condemnation but a natural incident to the easement itself. Therefore, the court reasoned, the utility company acquired the rights of ingress and egress despite the fact they were not described.

There are serious practical problems in adopting SMB's argument that Iowa-Illinois must describe the ingress and egress routes to be used. A utility looking to the future in attempting to assess its needs for access would either have to condemn enough routes to guarantee access to all points on the easement, condemn specific access routes as they became necessary, or use a combination of these alternatives. The first would obviously be cost prohibitive and would encumber large numbers of tracks which might never be needed for access. The second alternative would also be unworkable, in view of the need to make immediate repairs, particularly on an electric transmission line.

■ Failure of the notice to describe the secondary easement did not render the proceedings void, and SMB is bound by them. Of course, any future use of the secondary easement must be reasonable, and will entitle the owner to recovery for damages resulting. Iowa Code § 478.17.

### III. *The Constitutional Challenge.*

Finally, SMB argues that even if the notice complied with statutory requirements, it was defective on constitutional grounds. It complains that it was deprived of property without due process in violation of the fifth and fourteenth amendments to the United States Constitution and article I, section 18 of the Iowa constitution, because of the alleged deficiencies in the notice.

> It relies upon the general proposition that [i]n all proceedings of a judicial nature involving the taking of property, due process requires that the owners, as a matter of right, be afforded notice of the acquisition and opportunity to be heard with respect to the question of compensation.

1 Nichols, *supra* § 4.103, at 4–64.

■ Due process requires notice reasonably calculated, under all the circumstances,

to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. *Mullane v. Central Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). *Accord Mammel v. M & P Missouri Levee District,* 326 N.W.2d 299, 301 (Iowa 1982).

■ For the reasons expressed in the previous division, we believe the notice here was reasonably calculated to, and did, inform SMB of the nature and extent of the interests sought through condemnation and that the proceedings based on the notice did not violate the *Mullane* standard under the United States Constitution, nor under article I, section 18, of ours. *See Redmond v. Ray,* 268 N.W.2d 849, 852 (Iowa 1978) (similar provisions of federal and state constitutions usually deemed identical in scope, import and usage). *See also Draker,* 191 Iowa at 1384, 182 N.W. at 900.

We find no reversible error.

AFFIRMED.

All Justices concur except REYNOLDSON, C.J., and SCHULTZ and LeGRAND, JJ., who dissent.

SCHULTZ, Justice (dissenting).

I disagree with the view reached in division II of the majority opinion. I would hold that Iowa Code section 472.9 requires a description of the property taken for "the permanent and perpetual right of ingress and egress to and from" the easement. I would also hold that because the notice given the plaintiff failed to specify the access points or to describe the remaining farmland the condemnation procedure is void. As this failure is jurisdictional, I would reverse the district court's refusal to grant the plaintiff's motion for judgment on the pleadings.

The facts in this case are undisputed. The notice of hearing given to SMB provided a detailed legal description of the 150-foot wide strip of land required for the installation of the transmission line. In addition, the notice advised that Iowa-Illinois sought condemnation for a "permanent and perpetual right of ingress and egress to

and from said property;" however, the notice did not provide a description of the extent and the location of the access points, nor did it describe the remaining portions of the SMB farmland or the portion thereof that was to be subject to this access.

A review of the statutory authority and principles concerning the nature, extent, and procedure for acquisition of an easement for an electric transmission line is helpful. Iowa Code chapter 478 provides statutory authority for a utility to obtain a franchise to acquire such an easement. The franchise grants the utility authority to construct, erect, maintain and operate a transmission line over any grounds for the purpose of transmission of electric current. Iowa Code § 478.1 (1981). It also vests the utility with the power to take property by condemnation through eminent domain proceedings. Iowa Code §§ 478.6 and .15 (1981).

The use of the land by the utility is limited, however, to such interest in the land as is necessary directly or indirectly for the purpose of erecting and maintaining its line. *Draker v. Iowa Electric Co.,* 191 Iowa 1376, 1382, 182 N.W. 896, 899 (1921). A taking beyond this purpose is not the taking of private property for public use, but a taking for private use. *De Penning v. Iowa Power and Light Co.,* 239 Iowa 950, 957, 33 N.W.2d 503, 507 (1948). The landowner retains all right to use the property in any way that is not incompatible to the purpose of the easement. *Fanning v. Mapco, Inc.,* 181 N.W.2d 190, 195 (Iowa 1970). Thus, he may cultivate or otherwise use the land in a manner that is not inconsistent with the exercise of the easement by the utility.

The majority opinion adopts Iowa-Illinois's contention that in cases where the primary easement is described properly in the condemnation notice it is not necessary to describe the ingress and egress route of access to the easement. This view ignores the fact that the condemnation of access is an independent taking by condemnation in which SMB was not only entitled to compensation but was also entitled to a descrip-

tion of the extent of the taking pursuant to section 472.9.

The right of access to an easement, even a secondary easement, is a taking of property rights that entitle the condemnee to damages. *De Penning,* 239 Iowa at 961, 33 N.W.2d at 509 (by giving up the right of access to the easement the utility eliminates one element of damages which may have been considered). In *De Penning* this court held that "damages must be paid for the rights appropriated even though full use thereof may not be immediately contemplated." 239 Iowa at 956, 33 N.W.2d at 506. In that case the utility claimed that it had no present intention to use the access and that its rights were limited; however, the court found that these were not proper matters for consideration in fixing damages. The court also pointed out that if the utility wished to use the primary easement strip for access to erect and maintain its poles and line, it could exclude any right of access to the condemned strip over the rest of the farm. *Id.* at 954, 33 N.W.2d at 506.

We may conclude from our holding in *De Penning* that the utility not only has a right of access to its electric transmission line over the strip of land described in the primary easement, but, at its option, it may condemn additional access through the land from which it was taken. It must pay for this additional access, however. Although it was not an issue in *De Penning,* I conclude that if the condemnor wishes the additional access it follows naturally that the access must be described pursuant to section 472.9. Otherwise, compensation for the taking could not be accurately ascertained.

The majority, however, rely upon a quotation set out in 6 Nichols *The Law of Eminent Domain* § 26.112. This quote indicates that it is necessary to describe not the entire parcel but only the part of it which is used for the particular use. It also indicates that the description of ingress and egress to the easement sought does not readily admit to detailed description and would vary from time to time. Professor Nichols indicates, however, that his authori-

ty for this proposition is the case of *Otter Tail Power Co. v. Malme,* 92 N.W.2d 514 (N.D.1958). The majority opinion claims that the *Otter Tail* case concerns the same issue that is before us. I find that the majority's reliance is misplaced under our statute and that *Otter Tail* is distinguishable from our fact situation. Thus, the weight of Professor Nichol's quotation is diminished.

In *Otter Tail* the condemnee complained that there was not a specific description of the right of ingress and egress to the power line transmission easement. The notice given the landowners contained the general legal description of the land, the type of structure, the height of the wires, a legal description of each pole location, and "also the right of ingress and egress over the most feasible and reasonable route for the purpose of said easement." The North Dakota court stated as follows:

> Furthermore, the right of ingress and egress is not readily susceptible of any definite description. No attempt need be made to describe the exact location thereof. Our statute, Section 32–1518, subd. 4 NDRC 1943, referring to the contents of a complaint in eminent domain, requiring that the complaint show the location, general route, and termini of the right of way sought has no application to an incidental right arising from the taking of a specific easement.

*Otter Tail Power Co.,* 92 N.W.2d at 525.

Unlike *Otter Tail,* where no strip of land was condemned, our case presents a fact situation where we have a specifically described and located 150-foot strip of land available for access by the condemnor. Unlike the North Dakota approach of describing the location of poles, our statute, which provides eminent domain authority for an electric transmission line, contemplates the right of way to be a strip of land of not over one hundred or two hundred feet in width, depending on the size of the line. § 478.15. Moreover, Iowa Code section 472.9, specifically provides that the notice shall "describe the particular land or portion thereof sought to be condemned, in

such a manner that it will be clearly identified." As we previously pointed out, a right of access through the remainder of the farm to the primary easement is a compensable taking. *See De Penning,* 239 Iowa at 956, 33 N.W.2d at 506. The right of access is a portion of the particular land sought to be condemned that section 472.9 requires to be clearly identified. Although the North Dakota supreme court concluded that their statute requiring the complaint to show the location of the right of way had no application to the right of ingress and egress arising from the easement, our statute and factual situation are different and require a different result.

Moreover, other courts have recognized that right of ingress and egress to a transmission right of way is restricted to the portion of the servient property within the easement boundaries unless other land is specifically condemned. It was stated in *United States v. An Easement and Right of Way, Etc.,* 182 F.Supp. 899, 904 (M.D.Tenn. 1960):

> The Commissioners are instructed that the rights of the Government are limited to the 150-foot right of way condemned in this case except for the cutting of dangerous trees located beyond the right of way. The Government does not have the right of ingress and egress over other portions of defendants' property to reach the right of way. The Government, of course, has the power to acquire the right of ingress and egress over other portions of defendants' property if it so desires (*United States v. 39.20 Acres of Land, etc.,* D.C.D.N.D.1955, 143 F.Supp. 623), but that right has not been taken in this case. Unless the specific right of ingress and egress is condemned the Government does not obtain any such right.

*See also United States v. Easement and Right of Way, Etc.,* 249 F.Supp. 747, 750 (W.D.Ky.1966).

The majority opinion also points to our holding in *Draker* as lending support for its conclusion that routes of ingress and egress are too uncertain to be definitely described. We held in *Draker* that the right to future damages to crops incident to the use of the easement during the life of the franchise is too remote and speculative to be capable of assessing damages in a lump sum, and thus the statute postponing payment is not unconstitutional. *Draker,* 191 Iowa at 1383–84, 182 N.W. at 899. That holding remains correct, but it has no bearing on the duty of the condemnor to describe the route over the remaining farmland that he wishes to use to obtain additional access to his primary easement.

Finally, both the majority and Iowa-Illinois contend that Iowa Code section 478.17 actually grants the right of entry independent of the condemnation. If this conclusion has merit, there would be no necessity to condemn access rights to the transmission easement. If this right of entry is independent of condemnation, the owners of the easement could just as well traverse land owned by third parties in order to service their lines. I can not agree with this assessment.

Iowa Code section 478.17 merely provides a right of access over the property that is subject to an easement and provides for the payment of damages that exercise of access causes. This section, with its reference to "such transmission lines," must be read in conjunction with the rights of franchise and eminent domain contained in sections 478.-1, .6, and .15. It merely confirms the right of access that is implied from the right to construct and maintain lines and provides for damages caused thereby. Because of uncertainty, these damages are not ascertainable at the time of the acquisition of the original easement. Thus, section 478.17 grants no new rights, it merely clarifies the payment of damages for the interference caused by ingress and egress over the existing easement. As was pointed out earlier, an electric transmission line easement does not dispossess the owner of the land from using the land. In case of cropland, the owner of the land has a right to plant crops and section 478.17 merely gives the owner of the easement rights to interfere with that possession even though it may damage crops. This right is not independent of

condemnation, but accompanies it. Without condemnation of the land over which access is sought, the owner of the transmission lines has no right to disturb the possession of property beyond the easement. To do so would violate one of the basic rights which attaches to the concept of property ownership.

Additional reasons indicate that section 472.9 requires a definite description of the property taken, including access rights to the described strip of land containing the primary easement. Although an easement does not give title to land or confer any title in the land itself, it does constitute an interest in land, a vested right within the meaning of the constitutional guarantees including the prohibition against taking property without just compensation. 25 Am.Jur.2d *Easements and License* § 2 (1966). Additional access to a described easement would place restrictions upon the use of the land by the owner as it is an additional encroachment on the dominion. For example, an owner may decide to plat out the land for building lots or to build a lake upon the property. Unrestricted rights to cross this property would jeopardize this use. Moreover, the uncertainty that would be present with an undescribed access would cause the determination of damages to be difficult and speculative. For marketable title purposes, it would subject the entire remaining property to a clouded title thereby jeopardizing the ability to sell the property. These reasons dictate that the condemnor should describe in some particularity the portion of the land that it intends to reserve for access purposes.

Finally, Iowa-Illinois claims that SMB has waived any right to contest the condemnation upon the basis of alleged ambiguities in and inadequacies of the notice of condemnation. Citing *Thornberry v. State Board of Regents,* 186 N.W.2d 154 (Iowa 1971), it claims that such objections are not timely and cannot be raised for the first time following the condemnation hearing. I disagree. Jurisdiction of the subject matter may be raised at any time and may not be waived. *Matter of the Estate of Dull,* 303 N.W.2d 402, 406 (Iowa 1981). Moreover, in *Thornberry* we held that a condemnee may not stand by silently and take no affirmative action prior to the appellate proceedings on a matter relating to the exercise of substantive legislative power and authority by the condemning body. *Thornberry,* 186 N.W.2d at 156–57. We distinguished the exercise of legislative power from jurisdictional issues and cited the case of *Bourjaily v. Johnson County,* 167 N.W.2d 630 (Iowa 1969), where jurisdiction of the subject matter was properly an issue. In *Bourjaily* we held that the powers of eminent domain are strictly construed in condemnation proceedings and the failure to comply with the statutory requirements of serving notice on contract vendors and mortgagees deprived the district court of jurisdiction and rendered the proceedings a nullity. 167 N.W.2d at 634. In *Bourjaily,* as in the present case, jurisdiction was raised in the appeal to district court. *Id.* The failure to properly describe the property to be condemned is jurisdictional and renders the proceedings void.

I would reverse and remand for entry of judgment in favor of the plaintiff on the pleadings.

REYNOLDSON, C.J., and LeGRAND, J., join this dissent.